John W. FLANAGAN, Plaintiff,

v.

William C. SHIVELY, et al., Defendants.

No. CV–90–0143.

United States District Court, M.D. Pennsylvania.

Jan. 16, 1992.

---

John W. Flanagan, pro se.

Robert J. DeSousa, Asst. U.S. Atty., Chief, Civil Div., Lewisburg, Pa., Kim D. Daniel, Asst. U.S. Atty., Harrisburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff John W. Flanagan filed this *Bivens* [1] type civil rights action against twenty-three persons, all of whom are employed by the United States Bureau of Prisons, in various capacities, and in various locations across the country.[2] Plaintiff is currently incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania, ("USP–Lewisburg"), and alleges that the named defendants have conspired to deprive him of his First, Fifth, Sixth, Eighth and Fourteenth Amendment rights.

Plaintiff alleges that this conspiracy began on December 2, 1987 while he was incarcerated at the Federal Correctional Institution in Bastrop, Texas ("FCI–Bas-

---

**1.** *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** Eleven of the twenty-three named defendants are employed at FCI–Bastrop; two are employed by the Northeast Regional Office of the Bureau of Prisons in Philadelphia, Pennsylvania; three are employed by the South Central Regional Office of the Bureau of Prisons in Dallas, Texas; another two are employed at the United States Penitentiary at Leavenworth, Kansas ("USP–Leavenworth"); one is employed at the Federal Correctional Institutional at Butner, North Carolina; and the last two are employed by the Bureau of Prisons Central Office in Washington, D.C.

Named as defendants are:
1. William C. Shively, FCI–Bastrop;
2. M. Vogler, FCI–Bastrop;
3. Maureen Collier, FCI–Bastrop;
4. ___ Miles, FCI–Bastrop;
5. R. Brewer, FCI–Bastrop;
6. Allen Nagy, FCI–Bastrop;
7. H. Killyon, FCI–Bastrop;
8. C. Winslow, FCI–Bastrop;
9. Tim Browder, FCI–Bastrop;
10. P. Aubry, FCI–Bastrop;
11. R.D. Smith, FCI–Bastrop;
12. G.C. Wilkerson, North East Regional Office, Bureau of Prisons;
13. J.D. Williams, South Central Regional Office, Bureau of Prisons;
14. Earl L. Dame, South Central Regional Office, Bureau of Prisons;
15. Bill Burlington, South Central Regional Office, Bureau of Prisons;
16. Les E. Fleming, FCI Butner;
17. Earl Anderson, USP–Leavenworth;
18. ___ Carter, USP–Leavenworth;
19. Dave Essig, North East Regional Office, Bureau of Prisons;
20. Charles Turnbo, North East Regional Office, Bureau of Prisons;
21. K.M. Hawk, Central Office, Bureau of Prisons;
22. James A. Finney, Central Office, Bureau of Prisons; and
23. ___ Taylor, Bureau of Prisons.

trop") and continued through the filing of this action. In his original and amended complaints,[3] he recounts various incidents which he alleges establish a concerted effort on defendants' part to deprive him of his constitutional rights. He alleges, *inter alia*, that defendants wrongly determined that he was participating in a plot to escape from prison, denied him access to various Bureau of Prisons' ("BOP") forms, improperly housed him in disciplinary and administrative segregation, falsified BOP forms, used improper BOP forms, conducted disciplinary proceedings against him in an unlawful manner, prevented him from appearing in a television documentary, denied him administrative appeals, denied him access to the courts, improperly suspended his visitation rights, denied him the right to call witnesses in disciplinary proceedings, denied him necessary medical care and confined him in unconstitutionally-substandard housing. Plaintiff further alleges that defendants conspired to prevent him from being returned to USP–Leavenworth so as to deny him access to the United States District Court for the District of Kansas, where he had a case pending. For these alleged violations, plaintiff seeks compensatory and punitive damages. (Plaintiff's complaint, filed January 23, 1990 and amended complaint (Record Document No. 33), filed April 12, 1991).

Defendants have moved for dismissal of plaintiffs' amended complaint under Fed. R.Civ. 12(b) on grounds of: (1) improper venue; (2) failure to state a cause of action; (3) lack of personal jurisdiction over the defendants; and (4) qualified immunity of the defendants. (Record Document No. 42, filed August 9, 1991). We will enter an order granting defendants' motion to dismiss for failure to state a cause of action.

Plaintiff will not be granted further leave to amend. Our ruling on the motion to dismiss renders the other outstanding motions moot, with the exception of plaintiff's motion (Record Document No. 70, filed December 18, 1991) for sanctions pursuant to Fed.R.Civ.P. 11 and defendants' counter-motion[4] (Record Document No. 72, filed December 30, 1991) for Rule 11 sanctions. We will deny plaintiff's motion for sanctions and grant defendants' motion.

## DISCUSSION

*Motion to dismiss for failure to state a cause of action*

The standards for ruling on a Rule 12(b)(6) motion are well-established. A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Johnsrud v. Carter*, 620 F.2d 29 (3d Cir.1980); and *Truhe v. Rupell*, 641 F.Supp. 57, 58 (M.D.Pa.1985) (Rambo, J.). Although the complaint is to be liberally construed in favor of the plaintiff (See: Fed.R.Civ. 8(f)), the court does not have to accept every allegation it contains as true. Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true. *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

In an action asserting civil rights violations, factual allegations must be pled

---

**3.** In an order dated January 18, 1991 (Record Document No. 28) the court granted plaintiff leave to file an amended complaint to remedy pleading deficiencies raised by defendants in their first Rule 12(b)(6) motion. See order of January 18, 1991, Record Document No. 28.

**4.** Defendants did not file a separate motion for sanctions but incorporated their request for sanctions in their brief opposing plaintiff's motion for Rule 11 sanctions. Defendants seek counsel fees incurred in responding to plaintiff's

motion for sanctions, which they contend is patently frivolous.

Plaintiff clearly had notice that sanctions were being sought against him, had an opportunity to respond to the motions, and availed himself of that opportunity. See: *Jones v. Pittsburgh National Corp.*, 899 F.2d 1350 (3d Cir. 1990). Plaintiff addressed defendants' motion for sanctions in his reply brief. (Record Document No. 73, filed January 9, 1992).

with specificity.[5] Vague and conclusory allegations fail to state a cause of action. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) and *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 923 (3d Cir.1976). The complaint must contain a "modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." "The crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn, supra*, 838 F.2d at 666, citing *Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 67 (3d Cir.1986). This heightened specificity requirement serves a dual purpose by protecting government officials from frivolous claims and providing officials with sufficient notice of claims asserted against them so that they may raise all applicable defenses.

■ To conform to this requirement, plaintiff's complaint must allege the specific conduct complained of, where and when that conduct took place, the identity of the responsible parties, and the constitutional rights being asserted. *Colburn, supra*, 838 F.2d at 666. Whether plaintiff has met this standard is determined on a case-by-case basis. *Freedman v. City of Allentown*, 853 F.2d 1111, 1114 (3d Cir.1988). Pleading conclusory allegations that, for example, the defendants acted willfully, intentionally and deliberately or with reckless disregard of plaintiff's rights does not suffice. The court must look at the "factual scenario itself to examine whether the conduct alleged, viewed most favorably to plaintiffs, is reasonably susceptible to falling within the conclusions alleged." *Freedman, supra*, 853 F.2d at 1114–15.

■ A plaintiff is not, however, required to provide either proof of his claims or a "proffer of all available evidence" because in civil rights cases, "much of the evidence can be developed only through discovery" of materials held by defendant officials. *Frazier*, 785 F.2d at 68.[6]

■ Stringent pleading requirements also apply to allegations of conspiracy. The plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. In *Waller v. Butkovich*, 584 F.Supp. 909, 931 (D.C.N.C.1984), the district court outlined the pleading requirements in a conspiracy action.

> The Court is also satisfied that no heightened pleading requirements come into play simply because the complaint charges a conspiracy. However, the *Conley v. Gibson* requirement that *the defendant be given 'fair notice of what the plaintiff's claim is and the grounds on which it rests' may take on special import when a conspiracy is alleged.*
>
> In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice. The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from

---

5. The "heightened specificity requirement" for section 1983 claims does not, however, alter the general standard applied in ruling on a Rule 12(b)(6) motion to dismiss. *Colburn, supra* at 666, citing *Bartholomew v. Fisch*, 782 F.2d 1148 (3d Cir.1986).

6. We note that, although plaintiff is acting *pro se*, the record indicates that he is a former member of the Texas bar. It is well established that pro se complaints are held to less stringent standards than those drafted by counsel, *Haines*

*v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nevertheless, we presume that plaintiff possesses some knowledge as to the law and pleading requirements, and will take that into consideration in determining the adequacy of his complaint. See: *DeFina v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y.1977) ("Plaintiff, proceeding *pro se* is an attorney, and the court has a right to expect skillfully drawn pleadings from her.")

which such an agreement can be inferred.... (Citation omitted.) ... Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy ... (Citation omitted.)

Additionally, the plaintiffs must make 'specific factual allegations connecting the defendant to the injury' ... (Citations omitted.) ...On the other hand, an overt act need not be pleaded against each defendant, because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits ... (Citation omitted.) ... Nor are the plaintiffs required to allege exactly how the agreement was made—i.e. they need not allege exactly where and when, and with what words, the agreement was formed ... (Citations omitted.) ... conspiracies are by their very nature secretive, and the victims thereof are unlikely to have access to such facts before bringing suit ... (Citation omitted.) ... All that can be required at the pleading stage is that a defendant be given notice of how he is alleged to have participated in the conspiracy, so that he may intelligently prepare his answer and defense.

■ A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of the underlying material facts. *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. 1251 (D.C. Puerto Rico 1982). See also: *Chodos v. Federal Bureau of Investigation*, 559 F.Supp. 69 (D.C.N.Y. 1982), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962.

### Bivens

Under *Bivens*, a plaintiff may recover for violations of federal constitutional rights by federal employees or officials. Conduct which does not rise to the level of a constitutional violation is not actionable. *Bivens, supra*, 403 U.S. at 395, 91 S.Ct. at 2004.

### Disciplinary hearing

■ In an incident report [7] filed December 28, 1987 and signed by defendant Fleming, plaintiff was charged with plotting to escape from FCI–Bastrop. Attempted escape is the highest severity offense. Plaintiff allegedly plotted with a fellow inmate, James Hazeltine, and with persons outside the prison to have helicopter or a fixed-wing plane land on the institution grounds to pick up the two of them. Prison authorities learned of the plot, and placed plaintiff in administrative segregation pending an investigation and a hearing. Plaintiff was advised of the charges against him in writing on December 28, 1987 and was permitted to have the staff representative assist with his defense.

Evidence of plaintiff's involvement in the escape plot included:

1. communications from SIS at Fort Worth that Flanagan was possibly planning an escape utilizing a helicopter;

2. communications from the FBI that they had received detailed plans from an informant on the streets, of an escape from FCI Bastrop by Flanagan and Hazeltine utilizing a helicopter;

3. a copy of a letter mailed to an individual on the streets by Hazeltine, instructing him to purchase a helicopter and information concerning the Bastrop area and the airstrip at Smithville;

4. recorded telephone conversations to persons on the outside where the topic was about needing clothing for a tropical climate purchased; and

5. the fact that plaintiff was not about to be released.

Based on such evidence, the Institution Discipline Committee ("IDC"),[8] found that he had committed the misconduct alleged and imposed as sanctions: (1) the forfeiture of 100% statutory good time and (2) sixty days in disciplinary segregation.

Plaintiff appealed the ruling to the Warden at FCI–Bastrop citing what he alleged were procedural irregularities in the pro-

---

7. Record Document No. 2, filed January 25, 1990.

8. Defendants Killyon, C. Tucker, M. Vogler were members of the IDC.

ceedings and report. The Warden upheld the decision and the sanctions imposed. In addressing plaintiff's contention that he was not provided with all of the evidence against him, the Warden stated:

> [Y]ou ... object to the fact that you were not provided confidential information gathered in the course of the investigation. By policy, you are not provided access to confidential information, however, the confidential information was made available to your staff representative.

Plaintiff appealed that determination to the Regional Director of the Bureau of Prisons, who granted a partial reversal and remanded the matter back to the IDC at FCI-Bastrop for the possible refiling of charges.

Charges were refiled, and a hearing was held January 13, 1989, before the IDC with a staff representative again present at plaintiff's request. Plaintiff was again notified in writing of the charges against him well in advance of the hearing. The second time around, there was additional evidence of his involvement in the escape plot in the form of a piece of paper with sets of numbers and abbreviations written on it which prison authorities learned represented aircraft frequencies and pilot jargon. The IDC linked this with information in plaintiff's file indicating that he is "an above average pilot" and that he and Hazeltine, his alleged cohort, have the necessary skills to land or take off in an airplane from the grounds of the institution. Plaintiff was again found guilty of plotting to escape and was sanctioned with a disciplinary transfer to USP-Lewisburg and loss of statutory good time.

Although "prisoners retain certain basic constitutional rights, including the protections of the due process clause, prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir.1991), citing *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Prisoners facing a disciplinary hearing have the right to:

> ... receive written notice of claimed violations at least 24 hours in advance of the hearing and ... a written summary of evidence relied upon by the fact-finder in reaching its disciplinary decision.... Second, 'an inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense'.... [Citations omitted.].... '[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'

*Young, supra,* 926 F.2d at 1399, citing, *inter alia, Wolff, supra,* 418 U.S. at 566, 94 S.Ct. at 2979.

These protections apply if the prisoner is threatened with a *substantial deprivation* of rights or privileges as a consequence of his alleged misconduct. Less stringent protections apply if the threatened deprivation is of a lesser degree. "The requirements of the due process clause are flexible and must be analyzed in the context of the particular claim." The courts "must look to the nature of the interests at stake, both private and governmental, in order to determine the process due." *Crosby-Bey v. District of Columbia,* 786 F.2d 1182 (D.C.Cir.1986), citing *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

█ Prison administrators may impose reasonable restrictions on the conduct of disciplinary hearings. Prison disciplinary hearings are "intended to be informal and expeditious.... Evidentiary standards are therefore relaxed; inmates have no right to confrontation and cross-examination or to counsel." *Spence v. Farrier,* 807 F.2d 753, 757 (8th Cir.1986), citing *Wolff,* 418 U.S. at 569–70, 94 S.Ct. at 2981–82. See also: *Rodgers v. Thomas,* 879 F.2d 380, 383 (8th Cir.1989) and *Hensley v. Wilson,* 850 F.2d 269, 277–78 (6th Cir.1988). Inmates' right to cross examine adverse witnesses and to call witnesses in their defense is limited by institutional concerns of safety, order and

preventing possible retaliation and may be curtailed for those or other reasons, so long as prison officials explain at some point their reason for refusing to call a witness requested by the inmate. *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) and *Griffin v. Spratt,* 768 F.Supp. 153, 158 (E.D.Pa.1991).

The documents plaintiff filed with his complaint attest to the fact that the misconduct proceedings against him comported in every material respect with constitutional requirements. He received notice of the charges against him and was given a hearing which conformed to constitutional requirements.

■ Plaintiff's allegations that defendants did not comply in all respects with administrative regulations do not state a constitutional claim. The Constitution does not require strict adherence to administrative regulations and guidelines. The Constitution requires only compliance with minimal federal due process standards. Failure to conform to agency regulations implicates a constitutional right only if the inmate has a liberty interest in the rights afforded by such regulations. *Grandison v. Cuyler,* 774 F.2d 598, 603 (3d Cir.1985) and *Drayton v. Robinson,* 719 F.2d 1214, 1219 (3d Cir.1983).

Plaintiff's allegations of administrative/procedural irregularities range from failure to supply him promptly with requested forms to failure to rule on grievances/administrative to his satisfaction. None of the alleged irregularities deprived him of due process or implicated a liberty interest. See, e.g. *Hewitt v. Helms,* 459 U.S. 460, 468, 477, 103 S.Ct. 864, 869, 874, 74 L.Ed.2d 675 (1983) and *Flick v. Alba,* 932 F.2d 728 (8th Cir.1991), (per curiam), ("[F]ederal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure.")

Plaintiff further alleges that throughout the hearing and appeal process, federal employees and officials repeatedly falsified documents by forging someone's name, signing without authority, or affixing the wrong date. He does not allege any facts

to substantiate such claims, and on that basis we find that they are groundless.

*Disciplinary transfer*

■ Plaintiff avers that the disciplinary transfer to USP–Lewisburg imposed at the conclusion of the second hearing on escape charges was a violation of his constitutional rights. Transfer to another institution is a violation of plaintiff's rights only if ordered in retaliation for his exercise of constitutional rights. *Ponchik v. Bogan,* 929 F.2d 419, 420 (8th Cir.1991); *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991) and *Smith v. Maschner,* 899 F.2d 940, 47 (10th Cir.1990). Plaintiff's original and amended complaints contain facts and incorporate documents which indicate that that was not the case. A disciplinary transfer was clearly warranted under the circumstances. Plaintiff was implicated in a concerted, planned escape attempt. The IDC's finding of misconduct was, without question, supported by the minimum standard of evidence required by the Constitution, *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), and transfer to another institution, some distance from Texas, from the border, and presumably from the civilians who were planning to assist plaintiff in the escape, was certainly a reasonable sanction.

*Filing of false charges*

■ Plaintiff alleges that disciplinary charges filed against him were false. The filing of charges later proven to be false is not a constitutional violation so long as the inmate is provided with due process, unless the charges were filed in retaliation for the exercise of a constitutional right. *Newsom v. Norris,* 888 F.2d 371, 377 (6th Cir.1989) and *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989). An allegation by an inmate that he was falsely accused, without more, fails to state a civil rights claim. *Hanrahan v. Lane,* 747 F.2d 1137 (7th Cir.1984) and *Wilson v. Maben,* 676 F.Supp. 581, 584 (M.D.Pa.1987).

Although plaintiff alleges gratuitously that the original misconduct charges were filed against him to prevent him from ap-

pearing in a television interview, he provides no facts to support this allegation. Not only is it unsupported, it is belied by the overwhelming evidence of his involvement in the escape plot referenced in documents filed with plaintiff's complaint, which indicate that prison authorities had good reason to limit plaintiff's contact with the person who represented to be a television producer. They suspected that that individual was not a producer at all, but a civilian assisting plaintiff with planning his escape. Under the circumstances, prison authorities certainly had every reason to preclude further visitation pending an investigation. See: *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) and *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir.1987).

*Conditions of confinement and Eighth Amendment claims*

▪ Plaintiff alleges that he filed a request that he not be placed in the same cell with persons he deems "high AIDS risks." It is unclear as to whether he is asserting that his conditions of confinement violated the Eighth Amendment. The complaint contains only a one sentence reference to plaintiff's dissatisfaction with conditions in segregation. Plaintiff does not allege the requisite facts necessary to state an Eighth Amendment violation, not does he allege any harm flowing from his alleged confinement with persons he deems "high AIDS risks".

▪ Plaintiff also alleges in conclusory fashion violation of his Eighth Amendment right to medical treatment. To state an Eighth Amendment claim for denial of medical care, the plaintiff must prove specific facts which show that the defendants exhibited a "deliberate indifference" to his serious medical needs. Deliberate indifference is more than inadvertence or a good faith error; it is characterized by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). A "serious medical need" is one "that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988).

Negligent misdiagnosis or an inadvertent failure to provide care does not establish a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 104–106, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976). "The courts will not intervene upon allegation of mere negligence, mistake or difference of opinion ... For a constitutional tort to arise and for a cause of action to be stated under section 1983, the complainant must allege deliberate indifference to his continued health and well-being." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977). There must be proof that the conduct alleged was deliberate and intentional. *Hampton v. Holmesburg*, 546 F.2d 1077, 1081 (3d Cir.1976).

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment.'" *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979), quoting *Bowring, supra*, 551 F.2d at 48. See also: *Ellison v. Scheipe*, 570 F.Supp. 1361, 1363 (E.D.Pa.1983) ("prison officials cannot be required to second guess the medical judgment of the physician.") Along the same lines, evidence which shows only that an inmate disagrees with a diagnosis or the course of treatment selected for him are not sufficient. *Estelle, supra*, 429 U.S. at 105–06, 97 S.Ct. at 291–92. "The key question ... is whether defendants have provided plaintiff with some type of treatment, regardless of whether it us what plaintiff desires." *Lamb v. Maschner*, 633 F.Supp. 351, 353 (D.Kan.1986). See also: *Farmer, supra*, 685 F.Supp. at 1339 and *Bowring, supra*.

Plaintiff alleges that the conditions under which he has been confined, namely his repeated transfers to different institutions, and his subjection to the escape misconduct charges, have caused his health to deteriorate. He further alleges that he has been denied outside medical advice and examination. (Plaintiff's complaint, para. 79). None of plaintiff's allegations rises to the

level of an Eighth Amendment violation. Plaintiff is not constitutionally entitled to evaluation by outside medical personnel.

*Personal involvement by defendants*

■ Plaintiffs' complaint is deficient in another respect as well. He does not allege any material personal involvement on the part of several defendants in any of the activities alleged to have resulted in a violation of his constitutional rights. Some defendants are mentioned only once or twice in the pleadings and then the reference is only to some peripheral involvement on their part. The complaint is subject to dismissal as against those defendants on that ground alone.

■ An individual cannot be held liable under section 1983 action unless he caused or participated in an alleged violation of constitutional rights. Liability does not arise without a showing of direct responsibility for alleged constitutional violations. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir.1976). There must be a "causal connection, or an affirmative link, between the misconduct complained of and the official sued." *Campbell v. Lane,* No. 89–C–8289 (E.D.Ill. Oct. 25, 1990) (available on WESTLAW at 1990 WL 171598) citing *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). See generally: *Duncan v. Duckworth,* 644 F.2d 653, 656 (7th Cir.1981) (Plaintiff could not recover against prison warden for alleged Eighth Amendment violations, since it was unlikely that he participated in day-to-day decisions leading to the alleged delay in plaintiff receiving treatment) and *Ford v. Lane,* 714 F.Supp. 310, 315–16 (N.D.Ill.1989) (Prison warden and director of Department of Corrections could not be held responsible, based on their supervisory positions, for medical care alleged to be inadequate).

*Conspiracy claims*

■ As we stated in our prior order of January 18, 1991, plaintiff is required to support his broad-ranging allegations of conspiracy with more than speculation and conjecture. He must allege supporting facts showing an agreement among the numerous defendants, as well as the basis for alleging participation with respect to each defendant. Plaintiff's complaint again falls short of the necessary specificity. The amended complaint focuses on the conduct of only a few of the twenty-three defendants, and the allegations against them are insufficient to support a plaintiffs' claims of a far-flung conspiracy to deprive him of his constitutional rights.

As we have stated before, "[i]t is a long-standing rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." *Young, supra,* 926 F.2d at 1405 n. 16. "[E]ven if he were given a chance to amend his complaint, no layering of factual detail upon ... [plaintiff's] claims would cure the clearly baseless allegations upon which they are founded." *Young, supra,* 926 F.2d at 1405 n. 16,

*Transfer to USP–Lewisburg*

■ Plaintiff was transferred from FCI–Bastrop to USP–Leavenworth in 1988 following the IDC's finding that he had participated in the escape plot. He was subsequently transferred back to FCI–Bastrop following the partial reversal of the Committee's decision. After the second hearing, at which he was also found responsible for misconduct, he was sanctioned with a disciplinary transfer to USP–Lewisburg. Plaintiff alleges that his constitutional rights were violated by the transfers to FCI–Leavenworth and to USP–Lewisburg because these locations are far from his family who reside in Texas.

■ Plaintiff has no constitutional right to be incarcerated in any particular institution. To the extent he is alleging that he does, his claim must fail. Prison officials have administrative authority to transfer inmates from one institution to another. The due process clause imposes few restrictions on the exercise of that authority, regardless of any additional motives which are alleged to exist.

It doesn't matter what label is placed on the action or what other reasons may be

behind it; nor is it relevant that the conditions of confinement may become less pleasant as a result. We must allow prison officials the freedom to exercise their administrative authority without judicial oversight. Some administrative actions will inevitably make prisoners feel cheated; nevertheless, this does not give them a federal cause of action.

*Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir.1991) (Footnote omitted), citing *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). See also: *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Cf. *Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir.1991), ("A prisoner may not be transferred in retaliation for the exercise of a constitutional right.")

Plaintiff further alleges that the transfer from USP–Leavenworth interfered with his ability to litigate an action he filed in federal court in Kansas.[9] There are no allegations to indicate that the transfer was done for the purpose of denying his access to the courts.[10] Moreover, he fails to allege, and could not plausibly allege, that the transfer denied him access to the courts. Plaintiff provides us with no details as to the nature of this alleged action, but at most, his transfer may have resulted in the court transferring the action to another district, which would not have denied him access to the court in derogation of his constitutional rights.

### Loss of visitation privileges

 Plaintiff alleges that his "liberty interest" in family social visits was abridged because his visiting privileges were revoked for a period of time while charges were pending and following his misconduct citation on the escape charge. He states that his visiting privileges were restored on January 12, 1989. (Plaintiff's complaint, para. 58)

 Inmates have no constitutional right to visitation. Visitation is a privilege subject to revocation at the discretion of the Warden when necessary to ensure security and maintain order in the institution. Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion.

### Qualified immunity

 Defendants are entitled to qualified immunity unless they knew or reasonably should have known that their actions were depriving plaintiff of clearly articulated constitutional rights. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1985) and *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Federal officials do not lose qualified immunity from a *Bivens* action unless violation of federal regulation bears upon or implicates a clearly established constitutional right. *Young, supra*, 926 F.2d at 1404–05 n. 15 and *Culbreath v. Block*, 799 F.2d 1248, 1250–51 (8th Cir.1986). Qualified immunity issues should be resolved at an early stage of litigation if possible to do so without

---

9. Plaintiff alleges:

Sometime prior to 07 March 1989 members of the BOP [Bureau of Prisons] staff entered into a conspiracy to see that Plaintiff was not sent back to USP Leavenworth. The purpose of this conspiracy was to deprive Plaintiff of access to the U.S. District Court at Topeka, Kansas, where the Court action was pending mentioned in Paragraph 17 above. This conspiracy may or may not extend outside the BOP into other departments or agencies.

Plaintiff bases this allegation on a filing made in that action by the U.S. Attorney's office, which stated in relevant part:

5. On March 8, 1989, the U.S. Attorney's Office was informed by the Bureau of Prisons, Regional Office, in Dallas, Texas, that petitioner will be transferred within the next few weeks from Bastrop to another institution. In no event, however, will petitioner be returned to USPL [United States Penitentiary at Leavenworth].

para. 56.

10. Inmates have a right of access to the courts, arising under the Due Process clauses of the Fifth and Fourteenth Amendments, to challenge the conditions of their confinement. *Wolff, supra*, 418 U.S. at 576, 94 S.Ct. at 2984. That access however, is not unfettered, and this right must be balanced against the institution's interest in maintaining the security and safety of the prison. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).

prejudice to the right of the plaintiff to conduct reasonable discovery necessary to prove his claims. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987).

Plaintiff does not sufficiently allege violation of any clearly established constitutional right, thus entitling defendants to qualified immunity from his allegations.

*Venue*

Plaintiff's complaint is subject to dismissal on grounds of improper venue as well. Plaintiff alleges in his original complaint that venue is proper under section 1391(e)(2) and (4).[11] His amended complaint makes no reference to venue. Section 1391 governs venue in actions filed against the federal government and its employees and provides in relevant part:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) *a substantial part of the events or omissions giving rise to the claim occurred* ... or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. section 1391 (Emphasis supplied.)

■ Venue is proper under subsection (2) only if "a substantial part of the events ... giving rise to the claim" occurred in this district. Plaintiff does not allege that any recited events occurred in this district. The only link to this district is plaintiff's incarceration here at the time of filing, and that is insufficient to justify venue under section 1391(e)(2).

■ Subsection (e)(3), which authorizes venue in the district in which the plaintiff *resides,* does not apply. The United States Supreme Court held in *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 784, 63 L.Ed.2d 1 (1980), that subsection (e)(3) does not apply to suits filed against federal government employees for monetary damages, stating:

Suits for money damages for which an individual officeholder may be found personally liable are quite different. If section 1391(e) were construed to govern actions for money damages against federal officers individually, suits could be brought against these federal officers while in Government service—and could be pressed even after the official has left the federal service—in any one of the 95 federal districts covering the 50 states and other areas within federal jurisdiction. This would place federal officers, solely by reason of their Government service, in a very different posture in personal damage suits from that of all other persons, since under 28 U.S.C. section 1391(b), suits against private persons for money damages must be brought 'in the judicial district where all defendants reside, or in which the claim arose.'

*Stafford,* 100 S.Ct. at 784–85 (Footnote omitted). See also: *Micklus v. Carlson,* 632 F.2d 227, 240–41 (3d Cir.1980) (section 1391(e) does "not apply to actions for money damages brought against federal officials in their individual capacities.") and *Farmer v. Carlson,* 685 F.Supp. 1335, 1338 (M.D.Pa.1988).

■ Further, plaintiff does not *reside* in this district. An inmate does not become a resident of a state merely by virtue of his incarceration there if he was a resident of another state before his incarceration and there is no indication that he intends to relocate to the state of incarceration upon his release. There is no indication that plaintiff intends to relocate to Pennsylvania from Texas upon his release.

■ Nor is venue proper under section 1391(b), the only other possibility. Section 1391(b) provides that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in

---

11. There is no subsection (4) under 28 U.S.C. section 1391(e).

which the claim arise, except as otherwise provided by law.

28 U.S.C. § 1391(b).

Plaintiff alleges that the defendants reside in several different states, so the only proper basis for venue is the district where the claim arose, and that is not the Middle District of Pennsylvania. There are no allegations that any event even remotely connected with the chain of events giving rise to this suit occurred in Pennsylvania. There is, accordingly, no basis on the face of the complaint for venue in this court,[12] and it is subject to dismissal or transfer on that ground. 28 U.S.C. § 1406.[13]

*Motion to dismiss for lack of personal jurisdiction*

■ Finally, plaintiff's complaint is subject to dismissal on yet another ground raised by defendants. Not one of the twenty-three defendants resides in this district. To subject a nonresident to jurisdiction, due process requires that the defendant have minimum contacts with the forum state of such a character that maintaining the suit does not offend "traditional concepts of fair play and substantial justice." *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Minimum contacts signifies that the defendant has "purposefully [availed himself or herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) and *World-wide Volkswagen Corp. v. Wood-*

son, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ When personal jurisdiction is challenged, the plaintiff bears the burden of proving that non-resident defendants have the requisite minimum contacts with the forum state. *McKnight v. Civiletti,* 497 F.Supp. 657 (E.D.Pa.1980). Plaintiff cannot rest on the allegations of the complaint alone, but must establish the requisite jurisdictional facts through affidavits, answers to interrogatories, depositions, and the like to survive the motion.

Plaintiff has failed to provide such proof. If plaintiff had been able to flesh out his allegations of conspiracy, there was a possibility that personal jurisdiction could exist on the basis of the out-of-state defendants' participation in a conspiracy with Pennsylvania residents. Since plaintiff has failed in that respect, there is no basis, not even a tenuous one, for this court's exercise of personal jurisdiction over the out-of-state defendants.

*Leave to further amend*

■ The complaint now before the court is an amended complaint, and we see no legitimate purpose to be served in granting plaintiff leave to further amend. Nearly all of plaintiff's various claims suffer from several deficiencies which are not susceptible to cure by further leave to amend. Plaintiff's complaint will, therefore, be dismissed with prejudice.

*Motions for sanctions*

■ The only remaining matters are the cross-motions for rule 11 sanctions. Rule 11[14] provides for the imposition of

---

12. There would likewise appear to be no basis for personal jurisdiction over any of the defendants, but this does not negate our authority to transfer this case to another district. *Lorenz v. Cleveland Clinic Foundation,* 657 F.Supp. 613, 614 (W.D.Pa.1986).

13. Section 1406(a) provides:
 The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

14. Rule 11 provides, in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name ... A party who is not represented by an attorney shall sign the party's pleading, motion or other paper ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper, that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it

sanctions against counsel or parties acting *pro se* if the court finds that pleadings or other papers signed by the counsel or the party are " 'frivolous, legally unreasonable or without factual foundation, even though ... not filed in subjective bad faith.' " *Baxter v. A.T. & T. Communications,* 88–471, slip op. at 3 (D.N.J. Sept. 5, 1989), available on Westlaw at 1989 WL 121058, quoting *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986). The rule serves as a warning to counsel and parties alike that before filing a document, "they must 'Stop, Look and Listen' or as this circuit phrased it, 'Stop, Think, Investigate and Research.' " *Baxter, supra,* slip op. at 3, quoting *Gaiardo, supra,* 835 F.2d at 482. Accord: *Quiroga v. Hasbro, Inc,* 934 F.2d 497, 503–05 (3d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) and *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987).

Plaintiff argues that opposing counsel should be sanctioned for, *inter alia:*

(1) allegedly back-dating a certificate of service dated October 4, 1991;

(2) failing to indicate on a pleading signed by Andrew S. Quinn whether Quinn is an attorney;

(3) "deliberately" misquoting a local rule of court in a pleading;

(4) allegedly requesting relief from the court in a document captioned "status report"; and

(5) allegedly misstating what plaintiff has pled.

None of the matters plaintiff raises warrant the imposition of sanctions. None evidences bad faith or failure to investigate before signing a pleading. Plaintiff's basis for arguing that defendants "misquoted" the local rules of court is typical of the arguments he raises. His basis for this allegation is that he quibbles with defendants' placement of ellipsis marks and contends that by omitting certain words, defendants have sought to alter the plain meaning of the rule they quote. In each of the arguments he raises, plaintiff is engaging in the same frivolous nit-picking which has marked this case from its inception. Plaintiff has repeatedly insisted on raising frivolous matters, making groundless allegations, and baselessly impugning the motives of the United States Attorneys by raising the most trivial of objections to their alleged failure to adhere strictly to administrative regulations. All of this brings us to the second Rule 11 motion under consideration: defendants' counter-motion for sanctions.

■■ Based on the considerations just stated, we find that plaintiff should be sanctioned. He has persisted in filing repeated papers raising matters so trivial or so baseless that we can only conclude that his only purpose is to harass the defendants, needlessly prolong and complicate the case, etc., not to advance the case. Plaintiff himself states in his supporting brief (Record Document No. 70, filed December 19, 1991): "Plaintiff freely admits that he has continually charged misstatements of cases, misstatements of his pleadings and other unethical and sanctionable conduct against the Defendants' Attorney." We find his conduct sanctionable, and, consistent with the Rule 11 goal of deterring baseless filings in the district courts, we will require him to pay defendants' counsel fees for the time expended in responding to plaintiff's motion for sanctions.

We are aware, as we stated at the outset, that plaintiff is acting *pro se.* Although the pleadings of *pro se* litigants are "evaluated under less stringent standards than are the formal pleadings of lawyers", (*Thomas v. Taylor,* 138 F.R.D. 614, 617 (S.D.Ga.1991)), *pro se* litigants are not insulated "from the imperatives of the rule."

is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation..... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Briehler v. American Continental Property of New Jersey, Inc.,* Civ. No. 89–4761, slip op. at 9 (D.N.J. June 13, 1991), (available on WESTLAW at 1991 WL 117801), citing, *inter alia, Abdul–Akbar v. Watson,* 901 F.2d 329, 334 n. 2 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 237, 112 L.Ed.2d 196 (1990). Moreover, plaintiff is an attorney. Although he has stated in the past that he did not practice in federal court prior to his incarceration, plaintiff has filed and participated extensively in several actions before this court since his transfer to USP–Lewisburg, and is without question aware of the responsibility Rule 11 imposes on signatories to court filings.

Defendants seek fees for one hour spent preparing their opposition brief at the rate of $100.00 per hour. Defendants state in their brief that they spent well over three hours responding to plaintiff's motion for sanctions, but seek for only one hour of their time to avoid prolonging this matter with further proceedings to prove the exact time expended, the reasonableness of the hourly rate requested, etc. Their request is eminently reasonable, and we will award them fees in the amount of $100.00. We are aware that plaintiff is proceeding *in forma pauperis,*[15] and equally aware that the financial status of the sanctioned party is to be considered in calculating the monetary award. *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 195–96 (3d Cir.1988), (In calculating the total monetary compensation "owed by lawyers ... found to have violated Rule 11", the district courts should consider various mitigating factors, such as the sanctioned party's ability to pay.) However, the amount of the award is not great, and under all of the circumstances we find that a sanction of $100.00 is appropriate. If necessary, plaintiff can pay this amount over time.

---

**15.** See: Record Document No. 8, filed February 7, 1990.