24 F.Supp.2d 393 (1997)
Matilda A. SAYLES and Kim Crafton, Administratrices of the Estate of Ashley C. Crafton, a minor, Plaintiffs,
v.
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, COUNTY OF MONROE, a municipal corporation, Children and Youth Services of County of Monroe, James Biesecker, Agency Administrator, William Dougherty, Joan Roberts, Desiree Richardson, Jabrica Trashell Willis, Eddie Pace and Sat B. Bahl, Defendants.
No. CIV. 3:CV-97-0376.
United States District Court, M.D. Pennsylvania.
December 5, 1997.
Edwin Krawitz, Stroudsburg, PA, for Plaintiffs.
*394 Howard Vlan, Harrisburg, PA, for Defendants.

MEMORANDUM
NEALON, District Judge.
In this civil rights action filed pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, defendants Monroe County and Monroe County Children and Youth Services (MCCYS), on May 5, 1997, filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), with a brief in support submitted on May 19, 1997. Plaintiffs subsequently filed a brief in opposition on May 27, 1997, to which the defendants replied on June 30, 1997. The motion is now ripe for consideration and, for the following reasons, the motion will be granted.

I. BACKGROUND
Plaintiffs brought a wrongful death and survival action on February 24, 1997, in the Court of Common Pleas of Monroe County, which, defendants Monroe County and MCCYS, pursuant to 28 U.S.C. § 1441(b), removed to this Court on March 10, 1997. In their complaint, plaintiffs allege violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses in addition to the State wrongful death and survival actions.
This action arises out of the November 14, 1995, death of nine year-old Ashley Crafton, the daughter of Plaintiff Kim Crafton and the granddaughter of Plaintiff Matilda Sayles. Plaintiffs assert that the death of Ashley Crofton was caused by years of abuse by Defendants Desiree Richardson, Eddie Pace and Jabrica Trashell Willis, in whose custody and protective care Kim Crafton voluntarily placed Ashley. The complaint states that, during the two-year period prior to the decedent's death, defendants MCCYS, Monroe County, Biesecker, Dougherty and Roberts were on notice of harm, abuse, and drug trafficking taking place in the household of Richardson, Pace, and Willis, but failed to take action to prevent further abuse and drug trafficking. Furthermore, Plaintiffs advance the argument that the Defendants, pursuant to Pennsylvania law, were required to supervise children in foster home care[1] and to protect them from neglect and abuse and, despite having notice of the abuse, failed to do so, resulting in the death of the decedent.
Plaintiffs' Federal claims, brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, are predicated upon a violation of rights granted to them under various Pennsylvania statutory provisions. Whether the statutory sections actually grant these rights is the pivotal issue in this motion to dismiss. Plaintiffs first maintain that defendants, in failing to take Ashley into protective custody after receiving reports of her abuse, violated several sections of the Pennsylvania Child Protective Services Law (CPSL), which provide when a state agency is to investigate reports of child abuse including taking the child into protective custody. See 23 PA. CONS. STAT. ANN. §§ 6365-76 (West 1991 & West Supp. 1997). Plaintiffs also assert that the Commonwealth of Pennsylvania breached its duty under the Family Preservation Act, 62 PA. STAT. ANN. §§ 2171-2175 (1996), in which, the Department of Public Welfare is charged with both the duty of establishing a Family Preservation Program to assist families at risk of having their children placed in another home, and the duty of assisting counties in providing adequate care for children. According to the plaintiffs, the Commonwealth breached its duty under these sections by failing to adopt rules necessary to assist MCCYS in providing adequate care for children. Finally, plaintiffs contend that under the County Institution District Law, 62 PA. STAT. ANN. §§ 2201-2391 (1996), defendant Monroe County failed to meet its duty of "protecting and promoting the welfare of its children and youth." 62 PA. STAT. ANN. § 2305.
Defendants Monroe County and MCCYS filed this Motion to Dismiss on May 5, 1997. According to defendants, the complaint fails *395 to allege a valid claim against them pursuant to 42 U.S.C. § 1983 because, as a government agency, they had no duty to protect Ashley from harm inflicted upon her by other citizens. In support of this contention, defendants cite DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), for the proposition that a local government is liable for harm inflicted upon an individual by a private citizen only if the government owes the aggrieved person an affirmative duty of care or if the government enters into a "special relationship" with that individual. Under this rationale, defendants argue that they had no such affirmative duty to protect Ashley Crafton nor did they enter into a "special relationship" with her that would give rise to such a duty, and, therefore, plaintiffs cannot state a valid claim against them. Defendants further contend that the complaint should be dismissed against MCCYS because a civil rights claim may not be made against both a municipal agency and the municipality itself. Also, it is argued that under no circumstances can plaintiffs prove intentional discrimination against them in this case, and, as a result, the equal protection claim should be dismissed. Finally, defendants contend that plaintiffs have failed to sufficiently plead a conspiracy claim under 42 U.S.C. § 1985 because the complaint contains only conclusory allegations failing to allege a conspiracy.
Plaintiffs, in opposing the motion, contend that new legislation enacted in Pennsylvania following DeShaney has imposed an affirmative duty upon agencies such as MCCYS to protect children from suspected abuse and, consequently, they have stated a valid claim against the defendants. Furthermore, plaintiffs maintain that they have sufficiently plead a claim under section 1985, as well as a valid equal protection claim. Finally, plaintiffs maintain that this action is proper against both Monroe County and MCCYS and the complaint should not be dismissed.

II. ANALYSIS
Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed if the complaint fails to state a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the Court must view all allegations made in the complaint as true and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir.1987). Furthermore, "`a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Defendants' arguments for dismissal shall be addressed separately.

A. Plaintiffs' Due Process Claim and DeShaney

Defendants maintain that the language of the Fourteenth Amendment does not impose upon a local government, or its agencies, an affirmative duty to protect its citizens from harm inflicted upon them by other private individuals. In support, defendants cite DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), a case where a father beat his four-year-old son into a life-threatening coma. In DeShaney, plaintiffs sued, claiming that the county children and youth agency deprived the boy of his liberty in violation of the Due Process Clause inasmuch as the agency, which had received reports that the boy was being beaten by his father, failed to protect the boy against violence. In holding that the boy had not alleged a constitutional right of which he was deprived, the Court stated that:
[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.... It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other....

*396 Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.... If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.
DeShaney, 489 U.S. at 195-97, 109 S.Ct. 998 (citations omitted) (footnote omitted). The Court also rejected the plaintiffs' argument that there existed a "special relationship" between the boy and the agency that would create an affirmative obligation on the State to protect the boy. In doing so, the Court stated that a "special relationship" is created when the "State takes a person into custody and holds him there against his will." Id. 489 U.S. at 199-200, 109 S.Ct. 998. Furthermore, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. 489 U.S. at 200, 109 S.Ct. 998. Accordingly, the Court found that because the boy was not in State custody, the agency had no duty to protect him from his father and, therefore, the plaintiff had failed to allege an actionable civil rights claim.
Plaintiffs, citing language in DeShaney that "[a] State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes," argue that the Pennsylvania Legislature, following DeShaney, has mandated that local children and youth agencies immediately investigate all reports of child abuse and determine if emergency protective custody is required.[2]DeShaney, 489 U.S. at 202, 109 S.Ct. 998; 23 PA. CONS. STAT. ANN. §§ 6368, 6372. This legislative enactment, according to plaintiffs, removes them from the holding in DeShaney, because the State placed in itself the an affirmative duty to protect children from private harms, and, when it fails to act in accordance with this legislative mandate, a valid due process claim may be brought against the State.
The Court disagrees with plaintiffs' assertions that the recent amendments to the CPSL created a "special relationship" with Ashley Crafton, thus, giving rise to an affirmative duty on the part of the State to protect her from private harms. As stated in DeShaney:

*397 [i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf  through incarceration, institutionalization, or other similar restraint of personal liberty  which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harm inflicted by other means.
DeShaney, 489 U.S. at 200, 109 S.Ct. 998. (footnote omitted) (emphasis added). Moreover, the Third Circuit Court of Appeals has stated that although the "retraction of[S]tate intervention [may] permit[] the harm, ... [when] the harm in [a] case actively is caused by a source other than the [S]tate" the State is not liable. Philadelphia Police & Fire Assoc. for Handicapped Children, Inc. v. City of Philadelphia., 874 F.2d 156, 168 (3d Cir.1989). Consequently, it is the State's affirmative action of taking the individual into physical custody or actively restraining an individual's liberty that will expose it to liability on a due process claim. See also, Semple v. City of Moundsville, 963 F.Supp. 1416 (N.D.W.Va.1997) (holding that a "special relationship" giving rise to an affirmative duty to protect a person from private harms arises out of custody and not promises to protect by a State actor).
In this case, neither the State nor MCCYS affirmatively acted to restrain or take physical custody of the decedent by way of "incarceration, institutionalization, or other similar restraint of personal liberty." DeShaney, 489 U.S. at 200, 109 S.Ct. 998. She had been voluntarily placed, by her mother, in the care of Willis, Pace, and Richardson, and it was their active conduct, in the form of abuse, which led to her death. While the State may have failed to act to stop harm inflicted by others, that failure does not trigger the protections of the Due Process Clause absent state custody or active restraint. Philadelphia Police & Fire Assoc., 874 F.2d at 167-68; Doe v. Milwaukee County, 903 F.2d 499, 501-502 (7th Cir.1990).[3]
Furthermore, the Third Circuit Court of Appeals, in applying and interpreting DeShaney, has rejected the "contention that by creating its statutory scheme and embracing the class within the scheme, the state has created a special relationship requiring it to protect the class members." Philadelphia Police & Fire Assoc., 874 F.2d at 167; Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990). Adhering to the principle that either physical custody or an active restraint of liberty is necessary to find a deprivation of liberty, the Third Circuit has declined to accept a "constructive custody" argument that the State's inaction constituted a deprivation of liberty. Philadelphia Police & Fire Assoc., 874 F.2d at 168. Consequently, even if the State failed to act in accordance with the CPSL, such a failure to protect a child would not constitute a deprivation of liberty, as the CPSL does not create a special relationship requiring it to protect the class members. Philadelphia Police & Fire Assoc., 874 F.2d at 168.
Insofar as plaintiffs argue that it is "mandatory for the local agency to take the abused child into protective custody and care, regardless of [whether the] child is ... in the private care of a father or in foster care or in some facility," the legislative enactments following DeShaney do not support this contention. (Plaintiff's Brief in Opp. at 9). Section 6368 of the CPSL does require immediate investigation following reports of child abuse and visitation with the child to determine if emergency protective custody is required. However, the 1994 amendments to section 6368, upon which plaintiffs rely, did not become effective until July 1, 1996, more than seven months following the death of Ashley Crafton. Therefore, even assuming, arguendo, that amendments had imposed a higher degree of liability on the State, that duty would not have applied until July 1, 1996.
*398 Additionally, section 6372 of the CPSL does not mandate taking the child into custody, which, as discussed above, is the essence of imposing liability on the state under the Due Process Clause. That section only provides that the county agency remedy conditions that may be harmful to the well-being of the child which may not constitute taking the child into custody. Accordingly, because this section lacks the essential element of custody, the CPSL does not create a "special relationship" or an affirmative duty sufficient to impose Fourteenth Amendment liability upon the state under DeShaney and Philadelphia Police & Fire Association.[4]See Doe, 903 F.2d at 502. Because DeShaney precludes a Fourteenth Amendment Due Process claim against the state or its agencies for failing to protect an individual from private harms, the defendants' Motion to Dismiss will be granted as to any due process claim contained in Count I.

B. Plaintiffs' Equal Protection Claim
In order for a plaintiff to sufficiently assert a claim based upon a violation of the Equal Protection Clause of the Fourteenth Amendment, the complaint must allege intentional or purposeful discrimination on the part of the defendant. Personnel Administrator v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870, (1979); Adams v. McAllister, 798 F.Supp. 242, 245 (M.D.Pa.1992). Plaintiffs, in bringing their equal protection claim, cite language in DeShaney that states that the state may not "selectively deny its protective services to certain disfavored minorities." DeShaney, 489 U.S. at 200 n. 5, 109 S.Ct. 998. However, in an attempt to trigger the safeguards of the Equal Protection Clause, plaintiffs have merely stated in the Amended Complaint that Ashley Crafton was a "black child," (Compl. at ¶¶ 1, 2) and have not alleged how, in failing to respond to the reports of abuse, Monroe County or MCCYS acted with intentional discrimination based upon the child's race. Furthermore, there are insufficient allegations that any denial of protective services selectively occurred in a manner designed to discriminate based upon race. The mere mention and inclusion of the child's race in the complaint, without more, is insufficient to maintain a claim predicated upon a violation of the Equal Protection Clause. Accordingly, the Motion to Dismiss will be granted with regard to the equal protection claim in Count I.

C. Plaintiffs' Conspiracy Claim
In Count IV of their complaint, plaintiffs have also brought a claim of civil conspiracy pursuant to 42 U.S.C. § 1985, alleging that defendants conspired to deprive them of constitutionally protected rights and equal protection of the laws. In support of their Motion to Dismiss, defendants maintain that plaintiffs have neither demonstrated that they were deprived of a constitutional right, nor have they properly plead a claim of civil conspiracy. In stating a claim for conspiracy, plaintiffs may not make "[b]are conclusory allegations of `conspiracy' or `concerted action,'" but are required to "expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred." Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D.Pa.), aff'd 980 F.2d 722 (3d Cir.1992), cert. denied, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). Such averments "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives." Id.
Under the Flanagan standard, plaintiffs' complaint fails to allege a claim for conspiracy against Monroe County and MCCYS. Construing plaintiffs' complaint in the most liberal manner, they have barely provided a broad allegation of conspiracy and their assertions are devoid of any factual support showing the role of each defendant or any "communication, consultation, cooperation or command." Id. Plaintiffs, in opposing the Motion to Dismiss, argue that the *399 Amended Complaint sufficiently alleges a conspiracy and a "cover up" by the defendants designed to deprive Ashley Crafton of her constitutional rights. (Paragraph 33 of Amended Compl.) The allegations made in the Amended Complaint state only that certain defendants made statements relating to the reports of abuse and attempted to excuse themselves from the tragic death that had occurred. Nowhere have the plaintiffs provided any factual support of an agreement or communication of conspiracy against them. Plaintiffs have failed to bolster their "broad-ranging allegations of conspiracy with [anything] more than speculation and conjecture," and thus have failed to sufficiently plead a claim of conspiracy against the defendants. Id. Accordingly, the Motion to Dismiss will be granted as to the allegations of civil conspiracy contained in Count IV of the Amended Complaint.

III. CONCLUSION
The Motion to Dismiss of Defendants Monroe County and MCCYS will be granted as to Counts I and IV of the Amended Complaint, which are the only federal claims in which these defendants are named. Furthermore, because the federal claims are now dismissed against Monroe County and MCCYS, and only state causes of action remain, the Clerk of Court will be directed to close this case as to these defendants.
NOTES
[1] Although plaintiffs make arguments regarding children who are in foster homes, this is not a situation where the child was placed in a foster home by either a private or public agency. Kim Crafton voluntarily placed her daughter with three individuals who were her friends and acquaintances, and it is not alleged that any State agency was involved in this decision.
[2] Although plaintiffs, in their brief in opposition, contend that sections 6365 through 6376 of the CPSL create a special relationship between the state and Ashley Crafton and, therefore, an affirmative duty to act, only sections 6368 and 6372 could potentially impose such a duty, as they are the only sections addressing the responsibilities of a State agency following reports of abuse. Section 6368 provides, in relevant part, that:

[u]pon receipt of each report of suspected child abuse, the county agency shall immediately commence an appropriate investigation and see the child immediately if emergency protective custody is required or has been or shall be taken or if it cannot be determined from the report whether emergency protective custody is needed. Otherwise, the county agency shall commence an appropriate investigation and see the child within 24 hours of receipt of the report.... During the investigation, the county agency shall provide or arrange for services necessary to protect the child while the agency is making a determination pursuant to this section.
23 PA. CONS. STAT. ANN. § 6368(a) (West Supp.1997). Whereas section 6372 provides that a county agency:
shall be as equally vigilant of the status, well-being and conditions under which a child is living and being maintained in a facility other than that of a parent, custodian or guardian from which the child has been removed as the service is of the conditions in the dwelling of the parent, custodian, or guardian. Where the county agency finds that the placement for any temporary or permanent custody, care or treatment is for any reason inappropriate or harmful in any way to the physical or mental well being of the child, it shall take immediate steps to remedy these conditions including petitioning the Court.
23 PA. CONS. STAT. ANN. § 6372 (West Supp. 1997).
[3] The Doe Court addressed circumstances similar to those in the instant case, specifically, a statutory scheme that mandated immediate investigation by the State children and youth agency upon receiving reports of abuse. Doe, 903 F.2d at 501-503. In holding that DeShaney barred a 1983 claim against the state for failing to investigate and protect the child, the Court held that "under DeShaney's clear pronouncement, the ... failure to initiate an investigation, while possibly misguided," did not violate the plaintiffs' substantive due process rights. Id. 903 F.2d at 502.
[4] For the same reasons that it has been determined that a due process claim cannot be brought against the State for failing to act in accordance with the CPSL, namely the lack of a custodial duty or "special relationship," any potential breaches of the Family Preservation Act or the County Institution District Law, as alleged by the plaintiffs, would not give rise to a valid due process claim.