**Mark GOMEZ, Appellant,**

v.

**Paul GROSSHEIM, Curtis Frederickson, Paul Loeffelholz, John Mathes, Ron Mathews, and Robert Pearce, Appellees.**

No. 89–1804.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1990.

Decided April 25, 1990.

Donald Degnan, Iowa City, Iowa, for appellant.

Anuradha Vaitheswaran, Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, BEAM, Circuit Judge, and WOODS, District Judge.[*]

HENRY WOODS, District Judge.

This action is brought pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the Iowa Department of Corrections, is serving a 25–year sentence for burglary. He has named as defendants the Superintendent and Assistant Superintendent of the Riverview Release Center at Newton, Iowa; the Superintendent of the Iowa Medical Classification Center at Oakdale, Iowa; the Deputy Director of the Iowa Department of Corrections; and two staff psychiatrists. From September 11, 1984 to March 21, 1985 plaintiff was incarcerated at the Riverview Release Center at Newton, Iowa. The Riverview Center is a minimum security institution. During this incarceration plaintiff suffered from an inability to urinate voluntarily and was seen on a number of occasions at the University of Iowa Hospital in connection with his problem. Doctors found neither the cause nor the cure, thus the plaintiff was required to catheterize himself several times a day.

On March 21, 1985 plaintiff was transferred to the Iowa Medical Classification Center at Oakdale for a psychiatric evaluation to determine if he was a suitable candidate for furlough and to see if he qualified for a pre-release program when he next met the parole board the following year. On March 25, 1985 plaintiff was seen at a urology clinic and was diagnosed as suffering from a urinary tract infection. He was placed on the antibiotic Velosef, advised to increase his self-catheterization from two to four times daily and was scheduled for a follow-up appointment on April 11, 1985. The purpose of the follow-up visit was to obtain a urine sample to determine if the urinary tract infection had been successfully treated. Plaintiff refused to attend this follow-up visit of April 11. The record indicates that one of the principal reasons for the refusal was that he was required to wear leg irons to the clinic. Plaintiff was not forced to keep the appointment and voluntarily signed a waiver of treatment form. On April 18, 1985 plaintiff was transferred back to the Riverview Release Center and on May 2, 1985 was transferred back to the Medium Security Unit at Mount Pleasant, Iowa. On May 31, 1985 he was transferred to the maximum security unit at the Iowa State Penitentiary at Fort Madison, Iowa.

Plaintiff argues that he had a constitutional right to refuse to keep the follow-up appointment at the urology clinic based upon a right of privacy and a liberty inter-

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

est created by Iowa prison rules. He claims that the subsequent transfers, noted *supra*, were retaliation for his exercise of this right. We do not find it necessary to reach the constitutional issues raised by Gomez because we do not believe that the record supports his claim of retaliation. We therefore affirm the District Judge, who granted summary judgment for the defendant.[1]

Gomez was sent to the classification center at Oakdale for a psychiatric examination. (App. at 107). In connection with such an examination, it was incumbent to rule out any physical problems. The routine urinalysis which Gomez refused on April 11, 1985 was part of this physical examination. It was a follow-up to an examination by Dr. Bernard Fallon, a urologist at the University of Iowa Hospital, on March 25, 1985, at which Gomez complained of bloody urine and pain with catheterization. (App. at 83). On April 5, 1985, he had refused to attend a scheduled otolaryngology appointment. (App. at 89). Under prison regulations he had the right to refuse these examinations. However, his refusal made it impossible to pursue further psychiatric and physical evaluations.

The record supports the conclusion that he was transferred from the medical classification center, not for retaliatory reasons but because further evaluation could not be pursued at this facility. (App. at 75). While this transfer may have been causally related to his refusal to give a urine sample, it was in the exercise of administrative discretion and was not retaliation. The only purpose for the presence of Gomez at the classification center was to secure a psychiatric and concomitant physical evaluation. When such an examination was no longer possible, the prison authorities had no option but to return him to the facility at Riverview from whence he had come to the classification center.

The Riverview facility is restricted to prisoners eligible for furlough. Gomez was not eligible for furlough because his evaluation was terminated at the medical classification center as a result of his refusal to accept medical treatment. His transfer back to the medium security facility at Mt. Pleasant was in accordance with prison regulations and was clearly an administrative matter. (App. at 128). In no sense could it be described as retaliatory. The same observation applied to the transfer to the maximum security facility at Fort Madison on May 31, 1985. The notice of transfer stated a perfectly reasonable and legitimate administrative reason. "You have refused medical treatment and for your own health and personal safety the staff at [Mt. Pleasant] feels that your health problems can be more readily monitored at the infirmary at [Fort Madison]." (App. at 132).

We find no basis in the record for ascribing an ulterior motive to the transfers. Each is based on thoroughly understandable prison policy rules and procedures. While they may have been related to his refusal to attend the April 11, 1985 medical appointment, this is simply "but for" causation. The transfers were directly related to system concerns, i.e., better medical facilities at Fort Madison for monitoring the plaintiff's health and the fact that prisoners who were not eligible for early release or furlough were not kept at Riverview. The State of Iowa has wide discretion in transferring prisoners between its various prison facilities:

> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.
> . . . .
> Transfers between institutions, for example, are made for a variety of reasons

1. The Honorable Charles R. Wolle, United States District Judge, Southern District of Iowa.

and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate.

*Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

The judgment is affirmed.