929 F.2d 419
 Thomas PONCHIK, Appellant,
v.
Joe BOGAN, Warden; G.C. Wilkinson; Phill Wise; C.
Thesing; M. Bell; Edward Cartwright; D. Olazaba; J.
Loftness; R. Church; J. Nelson; Tony Calabrese; Joe
Lawless; R. Laabs; Capt. Graham; E. Burgeson; J. Fuller;
D. Steffens; Mr. Gustafson; R. Kahn; K. Farrell; G.
Carmona; Larry Schatte; P. Schultz; John Doe; and Jane
Doe, Appellees.
 No. 90-5317.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 6, 1990.
Decided April 1, 1991.
 
 Thomas Ponchik, pro se.
 Lonnie F. Bryan, Asst. U.S. Atty., Minneapolis, Minn., for appellees.
 Before JOHN R. GIBSON and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 Thomas Ponchik, a federal inmate, appeals from the district court's order dismissing several defendants and granting summary judgment to the remaining defendants in Ponchik's Bivens-type action. Ponchik's main argument for reversal is that he was entitled to a trial on his claim that he was transferred from the Federal Medical Center (FMC) in Rochester, Minnesota in retaliation for the exercise of his first amendment rights. We affirm.
 
 
 2
 A prisoner may not be transferred in retaliation for the exercise of a constitutional right. Murphy v. Missouri Dep't of Correction, 769 F.2d 502 (8th Cir.1985) (per curiam). Here, the fact that Ponchik had filed two lawsuits against prison officials was clearly a factor in requesting his transfer; this matter was underlined in the transfer request form. Nevertheless, upon review of the record, we conclude that the district court correctly applied the "but for" test in determining that Ponchik's transfer would have been requested, even had he not filed the lawsuits, because of his serious and repetitive misconduct. See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir.1979), cited with approval in Murphy, 769 F.2d at 503 n. 1.
 
 
 3
 Furthermore, Ponchik's due process right to a disciplinary hearing before the transfer was not violated. This right was created by the Bureau of Prisons regulation set forth at 28 C.F.R. Sec. 541.13, Table 4, (1987)[1], which clearly mandated such a hearing before a nonemergency disciplinary transfer. See Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (right to hearing prior to disciplinary transfer may be created by regulations imposing conditions on discretionary power of officials to transfer prisoners). We find the reasoning of Castaneda v. Henman, 914 F.2d 981, 983-84 (7th Cir.1990), that section 541.13 did not create such an interest because of the lack of criteria to distinguish between disciplinary and nondisciplinary transfers, unpersuasive. Here, as the magistrate judge found, Ponchik was afforded procedurally sound disciplinary hearings prior to the transfer.
 
 
 4
 Accordingly we affirm.
 
 
 
 [1]
 This regulation provided
 
 
 [1]
 Sanctions of the Institution Discipline Committee: (upon finding the inmate committed the prohibited act)
 ....
 (c) Recommend disciplinary transfer. The IDC may recommend that an inmate be transferred to another institution for disciplinary reasons. Where a present or impending emergency requires immediate action, the Warden may recommend for approval of the receiving Regional Director the transfer of an inmate prior to either a UDC [Unit Discipline Committee] or IDC hearing. Transfers for disciplinary reasons prior to a hearing before the UDC or IDC may be used only in emergency situations and only with approval of the receiving Regional Director. When an inmate is transferred under these circumstances, the sending institution shall forward copies of incident reports and other relevant materials with completed investigation to the receiving Institution's Institution Discipline Committee. The inmate shall receive a hearing at the receiving institution as soon as practicable under the circumstances to consider the factual basis of the charge of misconduct and the reasons for the emergency transfer. All procedural requirements applicable to UDC and IDC hearings contained in this rule are appropriate, except that written statements of unavailable witnesses are liberally accepted instead of live testimony.