**Alfonso R. SISNEROS, Plaintiff–Appellee/Cross Appellant,**

**v.**

**Crispus NIX, Warden, Iowa State Penitentiary; Paul Hedgepeth, Deputy Warden; Paul W. Grossheim, Director, Iowa Department of Corrections, Defendants–Appellants/Cross Appellees.**

Nos. 95–1914, 95–1955.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 23, 1996.

Decided Sept. 13, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 28, 1996.*

---

* Judge Hansen and Judge Morris Sheppard Arnold would grant the suggestion.

Layne M. Lindebak, Assistant Attorney General, Des Moines, Iowa, argued for appellants (Kristin W. Ensign, on the brief).

Barbara A. Schwartz, Iowa City, Iowa, argued for appellee (John B. Whiston, on the brief).

Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.

LOKEN, Circuit Judge.

Arizona transferred inmate Alfonso Sisneros to the Iowa State Penitentiary ("ISP") under the Interstate Corrections Compact

(the "Compact"). After he filed numerous grievances and two lawsuits, Iowa sent Sisneros back to Arizona. In this § 1983 action against three high-ranking prison officials, the district court granted summary judgment in favor of Sisneros on his damage claim for retaliatory transfer, and summary judgment in favor of defendants on Sisneros's challenge to ISP's English-only rule for inmate correspondence. Both sides appeal. We reverse the damage award in favor of Sisneros and otherwise affirm.

## I. Background.

Sisneros was transferred from Arizona to Iowa in January 1991 pursuant to a Compact agreement between the two States. *See* Iowa Code Ann. § 913.2, Art. III. In the first six months after his transfer, Sisneros filed numerous "kites" challenging (i) adverse rulings by the no-contact visitation committee, (ii) ISP's English-only rule, and (iii) a decision by ISP's Native American Consultant that Sisneros, who is of Hispanic and Native American descent, must furnish a Bureau of Indian Affairs enrollment number in order to participate in ISP sweat lodge ceremonies.

In September 1991, Sisneros filed this action, claiming that the English-only rule violates his First Amendment and equal protection rights. In November 1991, he sought an order holding prison officials in contempt of the district court's consent decree in another case because the Native American Consultant would not grant him access to sweat lodge ceremonies until Sisneros disclosed his BIA enrollment number. In December, the Iowa Department of Corrections asked the State of Arizona to "find an alternate placement" for Sisneros, explaining he "has not been a very cooperative guest." He was transferred back to Arizona on February 5,

1992, and filed a supplemental complaint alleging that this transfer was in retaliation for his "litigation activities."

Following discovery, both sides moved for summary judgment. The district court granted summary judgment for Sisneros on his retaliation claim, concluding: "defendants failed to articulate, *let alone establish,* a non-retaliatory reason for transferring Sisneros back to Arizona in February 1992."[1] The court denied defendants qualified immunity on this claim and awarded Sisneros $5639.20 in compensatory damages and $2000 in punitive damages. However, the court upheld ISP's English-only rule after applying the standards governing inmate First Amendment claims adopted in *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987), and *Thornburgh v. Abbott,* 490 U.S. 401, 404, 109 S.Ct. 1874, 1876, 104 L.Ed.2d 459 (1989). Defendants appeal the damage award. Sisneros cross appeals the amount of damages awarded.[2] We review these summary judgment issues *de novo. See Earnest v. Courtney,* 64 F.3d 365, 366 (8th Cir.1995).

## II. The Retaliatory Transfer Claim.

■ Prison officials may not punish an inmate because he exercises his constitutional right of access to the courts. *Goff v. Burton,* 7 F.3d 734, 736–37 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994). This prohibition against retaliatory punishment applies to transfers between prisons in a single State, and to transfers between state and federal prison systems under the Compact. *See Sterling v. Wood,* 68 F.3d 1124, 1126 (8th Cir.1995); *Hazen v. Reagen,* 16 F.3d 921, 925 (8th Cir.1994); *Ponchik v. Bogan,* 929 F.2d 419 (8th Cir.1991); *Murphy v. Missouri Dept. of Correction,* 769 F.2d 502, 503 (8th

1. On appeal, defendants argue that the italicized portion of this statement means that the district court placed the burden of proof as to retaliatory motive on defendants, contrary to our decision in *Goff v. Burton,* 7 F.3d 734, 738 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 817. Although the district court correctly stated our ruling in *Goff* much later in its 71-page opinion, we conclude that the court misapplied this controlling precedent.

2. Sisneros also cross appealed the dismissal of his challenge to the English-only rule. However, after Arizona transferred Sisneros to a third State, at his request the district court dissolved its injunction requiring defendants "to use all available efforts to secure Sisneros' return to Iowa." Sisneros then advised this court that his English-only claim is moot, and therefore we do not consider it.

Cir.1985). Therefore, although paragraph 24(b) of the Compact agreement between Arizona and Iowa provides that "the sending state will retake any inmate" upon request, the district court properly undertook to determine whether Iowa's decision to retransfer Sisneros was unconstitutionally retaliatory. Defendants correctly argue that inmates may be transferred from one prison to another for any constitutionally permissible reason, or for no reason at all. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46, 248 n. 9, 103 S.Ct. 1741, 1745–46, 1747 n. 9, 75 L.Ed.2d 813 (1983). But a transfer in retaliation for exercising federal constitutional rights is actionable under § 1983.

■ In a retaliatory transfer case, "the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would have not occurred." *Goff*, 7 F.3d at 738. This is a "but for" test dealing with motive, not causation. In their depositions, defendants testified that Sisneros was returned to Arizona because he was "unhappy" at ISP, was an "obnoxious" and "ungracious" guest, and was unwilling to accept ISP's rules. The district court concluded that the only factual bases for these observations were Sisneros's lawsuits, and therefore the transfer was unconstitutionally retaliatory. We disagree.

■ The Fourth Circuit has noted, in the context of prison discipline, that inmate claims of unlawful retaliation must be treated with skepticism because "[e]very act of discipline ... is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996) (en banc). There is a similar need to identify precisely when "retaliation" is unconstitutional in reviewing inmate transfers under the Compact. When the transferred inmate has filed one or more lawsuits against the transferring prison or its officials, and that litigation has *caused* the transfer, the essential inquiry is whether the decision to transfer was *motivated* by the *fact* that the inmate sued, or by the *nature* of the dispute underlying the lawsuit. If the substance of the inmate's claim makes it appropriate to transfer him under the Compact for rational penological reasons, the

transfer does not become unconstitutional retaliation simply because the inmate made his claim known by filing a lawsuit. That was the essence of our decision in *Sterling v. Wood*, 68 F.3d at 1126–27—Sterling was sent back to the sending prison system because he had burdened the receiving institution with frivolous litigation, not because he had exercised his constitutional right of access to the courts.

■ This case again illustrates the distinction. In his lawsuits, Sisneros demanded the right to correspond in the Spanish and Apache languages, and to participate in ISP Native American ceremonies. Apparently, his former prison in Arizona had accommodated these desires. But at ISP, a State-wide rule required English-only correspondence. Regarding Native American ceremonies, ISP's Native American Consultant insisted that Sisneros furnish a BIA enrollment number. Sisneros demanded that ISP officials overrule the Consultant. But the consent decree leaves such issues to the Consultant's discretion, so ISP officials could not satisfy Sisneros's objections to the Consultant's interpretation of the decree. In these circumstances, the nature of Sisneros's claims—not simply the fact that he sued to enforce them—made it penologically appropriate to transfer him back to Arizona. *Cf. Gomez v. Grossheim*, 901 F.2d 686, 688 (8th Cir.1990) (no unlawful retaliation where "[t]he transfers were directly related to system concerns"). The Compact leaves Iowa free to decide that, if Sisneros is "unhappy" with rules that are appropriate for the Iowa inmate population, he should be returned to Arizona, where his needs can be more cost effectively accommodated. Thus, the district court erred in concluding that the summary judgment record disclosed only an unlawful retaliatory motive.

Defendants further argue that they are entitled to summary judgment because Sisneros has failed to prove unconstitutional retaliation. Although summary judgment is not often appropriate when motive is at issue, the undisputed facts in this record arguably establish that Sisneros cannot satisfy *Goff*'s rigorous but for test because his transfer back to Arizona was motivated by rational

penological concerns, not by the fact he had filed two lawsuits. *Cf. Ward v. Dyke,* 58 F.3d 271, 274–75 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 524, 133 L.Ed.2d 431 (1995).

 But we need not decide whether defendants are entitled to summary judgment on the merits of this claim. At this point in the litigation, Sisneros seeks only damages. Defendants are entitled to qualified immunity from any damage claim if they "demonstrate 'the objective legal reasonableness of the[ir] action assessed in light of the legal rules that were clearly established at the time it was taken.'" *Latimore v. Widseth,* 7 F.3d 709, 712 (8th Cir.1993) (en banc), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1124, 127 L.Ed.2d 433 (1994), quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The district court denied defendants qualified immunity, an issue we review *de novo. See Moorman v. Thalacker,* 83 F.3d 970, 972 (8th Cir.1996). At the time in question, the Compact agreement gave Iowa total discretion to send Sisneros back to Arizona. Sisneros had made it clear that he preferred Arizona's handling of his religious and language needs, and no prior case held that such a transfer would be contrary to clearly established law. In these circumstances, defendants' decision to transfer was objectively reasonable as a matter of law, and they are entitled to qualified immunity. *See generally Harlow v. Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982).

The decision of the district court is affirmed in part and reversed in part, and the case is remanded with instructions to enter final judgment in favor of defendants. We commend the members of the University of Iowa College of Law Clinical Law Programs for their excellent representation of Mr. Sisneros.

HANSEN, Circuit Judge, dissenting in part.

I respectfully dissent from that part of the court's opinion which reverses the grant of summary judgment to Mr. Sisneros on his retaliatory transfer claim. In my view, the district court was correct when it held, after reviewing all of the summary judgment record, that there was "not a shred of evidence that Hedgepeth and Nix had any other reason than retaliation for transferring Sisneros from Iowa back to Arizona." (Appellants' Addend. at 35.)

The right of inmates to have access to the courts "means that inmates must have a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Sterling v. Wood,* 68 F.3d 1124, 1126 (8th Cir.1995). Sisneros's complaints about the English only rule and not being able to take part in the Native American ceremonies were not frivolous claims but raised legitimate First Amendment concerns. The validity of Iowa's English only rule was recently successfully attacked by a Laotian prisoner. *Thongvanh v. Thalacker,* 17 F.3d 256 (8th Cir.1994). *Cf. Kikumura v. Turner,* 28 F.3d 592 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Sisneros's brief contains a representation that the defendants who responded to his motion for contempt of the consent decree in *Walker v. Scurr* (the method by which he was asserting his right to take part in Native American religious ceremonies) agreed that if he were returned to the Iowa prison, he would be allowed to take part in Native American religious ceremonies. (Appellee's Br. at 16 n. 2.) Sisneros first brought these claims to the defendants' attention by Sisneros's protected use of the prison grievance system. (Appellants' Addend. at 34.) The record is clear that from the prison administrators' viewpoint, Sisneros's use of the prison grievance system to seek redress on his claims was the "complaining" that made him an unwanted "guest" and "obnoxious." Deputy Warden Hedgepeth testified as follows:

Q. What do you mean by obnoxious?

A. Just kind of like you would expect reasonable behavior, reasonable compliance with being here at ISP because as we have said a time or two, you are a guest, if you don't like the way the rules are you could have asked to go back and if you don't like what we are doing here whether it be the rules with respect to writing or anything else, it is just too

bad, go back to Arizona, so go back there.

Q. But what you mean by obnoxious is he was complaining about things here?

A. Yes, complaining, obnoxious, I guess that they fall in the same category.

* * * *

Q. Is putting in grievances about potential violations of rights being ungracious?

A. I didn't say it was.

Q. But is it?

A. Filing a grievance is not being ungracious, it is just being totally obnoxious, complaining and all of that sort of stuff and not being willing to accept our rules, that is too bad, but all of that aside, we still can send him home for any reason or no reason.

(Dep. of Paul Hedgepeth, Sept. 29, 1992, at 55; 62–63.)

The district court also correctly applied the "but for" test set out in *Goff v. Burton*, 7 F.3d 734 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994). Sisneros's transfer only came about after he had filed legitimate legal actions to contest the prison's English only rule and the denial of his request to take part in the Native American ceremonies. I respectfully suggest that our court sifts with too fine a sieve in this case when it holds that the "nature of Sisneros's claims—not simply the fact that he sued to enforce them—made it penologically appropriate to transfer him back to Arizona." *Ante* at 752. The record before the district court clearly showed that both the Warden and Deputy Warden found Sisneros to be "ungracious" or "obnoxious" simply because he tried to use the prison grievance system and then the courts to redress his nonfrivolous complaints about his treatment at the prison. No other reason was advanced by the defendants. Sisneros had incurred no disciplinary sanctions while confined in Iowa.

With respect to the defendants' claim to qualified immunity, the court's reliance on the total discretion given to the receiving state by the Compact to send back a prisoner any time it wants to do so fails to recognize that that discretion cannot be exercised in retaliation for the prisoner's exercise of his constitutional rights to bring his complaints to a court. Sisneros had the same rights when confined in Iowa as any other Iowa prisoner. *See* Iowa Code § 247.2(IV) (1991) (currently § 913.2(IV)) ("All inmates who may be confined pursuant to the provisions of the compact ... shall be treated equally with such similar inmates of the receiving state ...."). The law in this circuit was clearly established in 1979 in a case from Iowa that an Iowa prisoner states a valid cause of action when he alleges he was transferred in retaliation for the exercise of his constitutional right of access to the courts. *Garland v. Polley*, 594 F.2d 1220, 1223 (8th Cir.1979). That prisoners are protected from retaliatory transfer was also made clear in our later cases decided prior to the events at bar. *Murphy v. Missouri Dep't of Correction*, 769 F.2d 502, 503 (8th Cir.1985); *Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991). Because the Iowa prison administrators had to treat Sisneros equally with Iowa prisoners, and because an Iowa prisoner could not be transferred in retaliation for exercising his constitutional right of access to the courts, it follows that Sisneros could not be either, regardless of the amount of discretion given to the receiving state under the Compact.

In my view, a reasonable prison administrator in Iowa, charged with knowing the law governing his conduct, would have known in 1992 that any transfer of a prisoner solely because he had exercised his First Amendment constitutional right of access to the courts was a prohibited retaliatory transfer subjecting the administrator to liability under 42 U.S.C. § 1983.

Accordingly, I respectfully dissent.