# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| ANTONIO SWEATT, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Lake County Circuit No. 97-7683 |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 02A01-9710-CV-00252 |
| BILLY COMPTON, ET AL., | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**February 2, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## APPEAL FROM THE CIRCUIT COURT OF LAKE COUNTY
## AT TIPTONVILLE, TENNESSEE

### THE HONORABLE R. LEE MOORE, JR., JUDGE

For the Plaintiff/Appellant:

Antonio Sweatt, Pro Se
Tiptonville, Tennessee

For the Defendant/Appellee
State of Tennessee:

John Knox Walkup
Mark A. Hudson
Nashville, Tennessee

For the Defendant/Appellee
Dr. Harold Butler:

James M. Glasgow
Union City, Tennessee

**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

# OPINION

This is a medical malpractice case brought by an inmate at a state correctional facility. The plaintiff brought the lawsuit against various prison officials and the prison doctor alleging federal constitutional violations as well as medical malpractice. The trial court granted the defendants' motion for summary judgment. We reverse the trial court's grant of summary judgment on the plaintiff's claims under the Eighth Amendment of the U.S. Constitution, and remand for further discovery. We affirm the grant of summary judgment on the remainder of the claims.

Plaintiff/Appellant Antonio Sweatt ("Sweatt") is an inmate at the Lake County Regional Correctional Facility ("prison") in Tiptonville, Tennessee. During his incarceration, Sweatt suffered from a number of medical maladies, including sinus problems, a breathing disorder, frequent nose bleeding and severe headaches, as well as structural abnormalities in his nose. In his lawsuit, Sweatt alleged that the Defendants, Warden Billy Compton, prison employees Steve Dotson, Ben Lindamood, Edna Freeman and Donna Klutts, and the prison's physician, Harold Butler, M.D., intentionally failed to provide him with appropriate medical care, treatment and correct medication, and that the medication prescribed to him caused his nose to bleed and caused him great pain. He asserted that surgery had been recommended for his condition, but had not been performed. Sweatt complained through letters and grievances, and he alleged in his lawsuit that the Defendants' acts were a form of retaliation against him for the grievances he had filed.

Defendant Butler filed a motion for summary judgment. Subsequently, the remaining Defendants filed a motion for summary judgment.

In support of his motion for summary judgment, Dr. Butler filed his own affidavit. Dr. Butler stated in his affidavit:

> The affiant treated the plaintiff, who was an inmate in the Lake County Regional Correctional Facility commencing in March of 1995. When the plaintiff was seen by the affiant, he treated him in the proper manner under all of the circumstances. In performing such medical diagnosis, care and treatment, the affiant states he exercised that degree of care and skill prevailing in this community by physicians in good standing considering the physical conditions and needs of the plaintiff, Antonio Sweatt. In addition, when it was apparent that the plaintiff required the services of a specialist, the affiant referred him to a specialist in Nashville who specialized in ear, nose and throat problems.

1

Defendant Freeman also filed an affidavit in support of the Defendants' motion for summary judgment. In her affidavit, she stated that Sweatt refused sinus medication offered to him at the prison clinic on March 2, March 6 and March 13, 1995. Freeman stated that, on March 16, 1995, a physician at the prison clinic gave Sweatt a nasal inhaler and two other medications. Sweatt was ultimately transferred to the Special Needs prison facility in Nashville on September 7, 1995. His medication was changed nine times before his return to the Lake County facility on December 19, 1995.

In response to the Defendants' motions for summary judgment, Sweatt filed his own affidavit. This affidavit stated his conclusory allegations that his medical needs were untreated but failed to refute the factual assertions in Dr. Butler's and Freeman's affidavits. Two affidavits from other inmates, R. Bradfield (a.k.a. Paul Farnsworth) and Sherron Myers, were also submitted, stating that their medical needs were not adequately treated. Sweatt also submitted a petition signed by thirty-seven inmates stating that they were denied medical treatment while incarcerated at the prison. Sweatt failed to produce any expert testimony that his treatment was inappropriate.

The trial court granted the Defendants' motions for summary judgment. In its order, the trial court reviewed Sweatt's claims, the affidavits in support of the motions for summary judgment and the record of pleadings and discovery. It noted that Dr. Butler had filed his own affidavit in support of his motion for summary judgment, and that Sweatt had filed no countervailing expert affidavit. Concluding that Sweatt failed to make out a prima facie case for violation of the appropriate standard of medical care, the trial court granted Dr. Butler's motion for summary judgment.

The trial court then examined Sweatt's claim of inadequate medical care in a 42 U.S.C. § 1983 action, in light of the remaining Defendants' motion for summary judgment. The trial court reviewed numerous pleadings filed by Sweatt and the Defendants' response to Sweatt's discovery requests and Freeman's affidavit. It then noted that a person claiming inadequate medical care under § 1983 must establish deliberate indifference to the plaintiff's serious medical needs. The trial court observed that Sweatt's medical condition is a sinus condition and found this not to be a sufficiently serious condition to warrant relief under § 1983. The trial court also found that Sweatt failed to allege conduct by the Defendants "with deliberateness tantamount to an intent to punish the plaintiff." The trial court then granted the remaining Defendants' motion for summary judgment. Sweatt filed a motion to reconsider, which the trial court denied. Sweatt then filed a notice of

appeal.

On appeal, Sweatt contends that the trial court erred in granting the Defendants' motions for summary judgment. He argues that the Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment of the U.S. Constitution, that the Defendants retaliated against him in violation of the First Amendment of the U.S. Constitution, and that the trial court denied him adequate discovery and that he was not permitted to obtain expert affidavits.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See id.*

On appeal, Sweatt alleges that he was denied adequate discovery and was not permitted to obtain expert testimony. Sweatt argues that the Defendants did not respond to his discovery requests, and that the trial court refused to order the Defendants to comply with his requests. Sweatt asserts that this prevented him from obtaining expert testimony with which to overcome Defendants' motions for summary judgment and prevented him from obtaining other crucial information, such as his medical records and information relating to the delay in his surgery. These assertions will be evaluated in the context of Sweatt's claims against Defendant Butler and the remaining employee Defendants.

Sweat contends that the trial court erred in granting Dr. Butler's motion for summary judgment as to the medical malpractice claims against him. In his affidavit, Dr. Butler stated that he treated Sweatt with the degree of skill and care prevailing in the community. He noted that when it became apparent that Sweatt needed a specialist for his condition, Dr. Butler referred him to one

3

in Nashville. Dr. Butler ceased treating Sweatt after he was referred to the specialist.

Dr. Butler's affidavit is sufficient to support his motion for summary judgment, even though he is a party. *See Smith v. Graves*, 672 S.W.2d 787, 790 (Tenn. App. 1984). Once the moving party has made and supported a motion for summary judgment by showing that there is no genuine issue of material fact, the burden shifts to the non-movant to establish the existence of a genuine issue of material fact. *See Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). Rule 56.06 of the Tennessee Rules of Civil Procedure states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In *Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977), the Tennessee Supreme Court held that a counter-affidavit from an expert competent to testify must be presented in order to make a genuine issue of material fact within the meaning of Rule 56.03 of the Tennessee Rules of Civil Procedure. In this case, the only affidavits filed by the Plaintiff in opposition to Butler's motion for summary judgment were his own and those of two fellow inmates at the prison. The affidavits of lay persons regarding whether the physician's medical care was below the appropriate standard of care are wholly insufficient to create a genuine issue of material fact. *See id*.

Sweatt argues that the denial of his requests to compel discovery prevented him from obtaining an expert's affidavit to rebut Dr. Butler's affidavit. However, the record indicates that Dr. Butler responded to Sweatt's first and second set of interrogatories and to Sweatt's third request for admissions. Butler's responses were acknowledged by Sweatt in his motions to the trial court to compel discovery. Nothing in the record supports Sweatt's allegation that he was prevented from obtaining an expert witness with which to rebut Dr. Butler's affidavit. Since there is no genuine issue of fact as to Dr. Butler's medical care of Sweatt, we affirm the grant of the summary judgment in favor of Dr. Butler.

Sweatt also contends that the trial court erred in dismissing his claims against the remaining Defendants, the prison employees. He first asserts that the employees were negligent in failing to provide him timely and effective medical treatment. Tennessee Code Annotated § 9-8-307(h), however, provides immunity for the employees for negligence occurring within the scope of their

4

employment. *See* Tenn. Code Ann. § 9-8-307(h) (Supp. 1998).[1] Therefore, the trial court correctly granted summary judgment in favor of the employee Defendants on Sweatt's claims of negligence.

Next, Sweatt argues that the employee Defendants were deliberately indifferent to his medical needs and that this conduct violated his rights under the Eighth Amendment of the U.S. Constitution. Tennessee Code Annotated § 9-8-307(h) does not grant immunity for allegedly "deliberately indifferent" conduct because it would be considered willful or malicious, and thus outside the scope of the Defendants' employment. *See* Tenn. Code Ann. § 9-8-307(h) (Supp. 1998).

In *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976), the United States Supreme Court articulated the standard for determining whether a prisoner's constitutional right to medical care under the Eighth Amendment of the U.S. Constitution has been violated. The Supreme Court stated:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291 (citation omitted); *see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (deliberate indifference to prisoner's serious medical needs amounts to cruel and unusual punishment and violates Eighth Amendment).

As noted by the Sixth Circuit in *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992), the *Estelle* standard consists of both an objective component--the prisoner's medical needs must be sufficiently serious--and a subjective component--the defendants must act in a deliberately indifferent manner to the prisoner's serious medical needs. In *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811, 823 (1994), the U.S. Supreme Court stated:

---

[1]This section reads:

> State officers and employees are absolutely immune from liability for acts or omissions or for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For purposes of this chapter, "state officer" or "employee" has the meaning set forth in § 8-42-101(3).

Tenn. Code Ann. § 9-8-307(h) (Supp. 1998).

It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."

*Farmer*, 114 S.Ct. at 1977 (citations omitted).

As the *Farmer* court noted, a plaintiff must prove that his medical needs are serious in order to show deliberate indifference. A "serious medical need" has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977). The objective component of the *Estelle* standard is not malleable into a rigid formula because it reflects the contemporary standards of decency within the society. *See Hudson v. McMillian*, 503 U.S 1, 10, 112 S. Ct. 995, 1001, 117 L. Ed. 2d 156 (1992). Therefore, in considering the seriousness of a medical need, courts must determine whether the defendant's act or omission resulted in a denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981). Neither negligence nor gross negligence will support a § 1983 claim:

[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

6

> indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 292.

Sweatt alleges that he suffers from "chronic sinusitis allergic rhinitis with conjunctivitis symptoms and structural abnormalities in the nose, which cause nose bleeding, migraine headaches and breathing disorder." He contends that he transferred to the Lake County correctional facility on March 1, 1995 and was not permitted to see a physician, defendant Butler, until March 16, 1995, after he complained that his rights were being violated. He complains that he was forced to pay for medication such as nasal spray. He asserts that he was denied needed surgery for his condition recommended by the specialist physician. He asserts that he was given treatment for his sinus condition that caused his nose to bleed.

We first consider Sweatt's claims of inadequate medical treatment apart from the alleged delay in the recommended surgery. On the undisputed facts before the trial court, Sweatt suffered from a sinus condition which was not treated as quickly as Sweatt desired and was treated in a manner that necessitated numerous changes in medication.

In support of the Defendants' motion for summary judgment, Defendants filed the affidavit of Edna Freeman. Freeman's affidavit stated that Sweatt refused sinus medication offered to him at the prison clinic on March 2, March 6, and March 13, 1995, and that on March 16, 1995, a physician at the clinic gave Sweatt a Becanase Nasal Inhaler as well as Aller-chlor and Nalfon medications. Ultimately, Sweatt was transferred to the Special Needs Facility in Nashville on September 7, 1995, where his medication was changed nine times before his return to the Lake County facility on December 19, 1995. Dr. Butler's affidavit discusses his medical treatment of Sweatt prior to his referral to a specialist.

In response, Sweatt filed his own affidavit. In his affidavit, he did not refute the factual assertions in Freeman's affidavit or Butler's affidavit detailing his medical treatment. Rather, Sweatt's affidavit states only his conclusory allegations that his medical needs were untreated. Sweatt also submitted the affidavits of two other inmates, R. Bradfield (a.k.a. Paul Farnsworth) and Sherron Myers, stating that their medical needs were not adequately treated, as well as a petition

7

signed by thirty-seven other inmates stating that they were denied medical care at the correctional facility. He submitted no expert testimony indicating that his treatment was inappropriate.

Sweatt argues that the Defendants did not adequately respond to his discovery requests, and that, consequently, granting the Defendants' motion for summary judgment on these claims was in error. However, Sweatt does not dispute the accuracy of the factual assertions in the Defendants' supporting affidavits; for example, he does not dispute that he was seen by physicians on the dates listed or that he was prescribed the medications listed. Rather, Sweatt asserts that this course of treatment was unsatisfactory. Under these circumstances, the discovery sought by Sweatt would not have altered the outcome of the motion for summary judgment on these claims. Apart from the issue of the recommended surgery, Sweatt in essence contends that his course of treatment was not fast enough, that the medications had unpleasant side effects and he was required to pay for some of them. Sweatt's disagreement with the treatment rendered will not itself support an Eighth Amendment claim under 42 U.S.C. § 1983. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981). He failed to submit evidence sufficient to create a genuine issue of fact as to whether this medical treatment amounted to a denial of "the minimal civilized measure of life's necessities," or that it posed "a substantial risk of serious harm." *Farmer*, 114 S. Ct. at 1977. Consequently, apart from his claim arising out of the alleged delay in the recommended surgery, the trial court did not err in granting the Defendants' motion for summary judgment as to Sweatt's claim that prison officials were deliberately indifferent to a serious medical condition.

Sweatt also asserts an Eighth Amendment claim based on an alleged two-year delay in the scheduling of the recommended surgery, arguing that the delay in surgery constitutes deliberate indifference to his serious medical needs. We must first consider the first component of Sweatt's claim, whether Sweatt suffered from a sufficiently serious medical need. "Federal courts have frequently found that medical needs of prisoners which require surgery constitute serious medical needs and when combined with deliberate indifference shown by prison officials constitute an Eighth Amendment violation." *Starbeck v. Linn County Jail*, 871 F. Supp. 1129, 1141 (N.D. Iowa 1994); *see also Dace v. Solem*, 858 F.2d 385, 387-88 (8th Cir. 1988) (finding that inmate should be allowed discovery before determining whether a painful nasal condition for which surgery was ordered was a serious medical need). Sweatt provided a copy of a January 1996 consultation report signed by

8

the specialist physician at the Special Needs Facility recommending that Sweatt have surgery on his sinuses in 1996. Sweatt also provided a copy of a February 1996 letter from the Special Needs Facility to Lake County Medical Services discussing the recommended surgery. In Dr. Butler's responses to Sweatt's requests for admissions, Dr. Butler indicated that the specialist to whom he referred Sweatt had recommended surgery. Sweatt did not receive any discovery on this issue; consequently, we are unable to determine from the record whether his condition is a sufficiently serious medical need under the Eighth Amendment. Sweatt "should be given a 'chance to develop his case to the point at which the courts can determine whether it has merit.' " *Dace v. Solem*, 858 F.2d 385, 388 (8th Cir. 1988) (quoting *East v. Lemons*, 768 F.2d 1000, 1001 (8th Cir. 1985)).

The second component of Sweatt's Eighth Amendment claim is subjective, whether the Defendants were deliberately indifferent to the inmate's serious medical needs. Sweatt alleges that the specialist physician at the Special Needs Facility recommended over two years ago that he have surgery and that, at the time of order of summary judgment, he had still not had the surgery. Through discovery, Sweatt requested his medical records from Defendants and repeatedly asked prison officials for information about the recommended surgery, the delay of that surgery, and the scheduling of medical appointments.

In *Proffitt v. Prison Health Services, Inc.*, 1996 Tenn. App. LEXIS 440 (Tenn. App. July 31, 1996), the Tennessee Court of Appeals addressed an inmate's claim similar to that presented by Sweatt. Prior to being incarcerated, the inmate in *Proffitt* had received a recommendation to surgically remove some screws in her femur. Evidence presented by the plaintiff showed that the prison officials were aware of the needed surgery and that a specialist the plaintiff saw while in prison also recommended that the plaintiff have the surgery. The plaintiff was eventually released on parole six months later without having the surgery. The plaintiff alleged that Prison Health Services, the company that contracted with the State of Tennessee to provide health care for inmates, was deliberately indifferent to her medical needs. The trial court granted summary judgment in favor of the health care provider. On appeal, the grant of summary judgment was reversed:

> The lack of satisfactory and conclusive evidence explaining the long and facially unreasonable delay in providing surgery for Plaintiff also prevents a summary judgment in respect to the charge of deliberate indifference; for, under the evidence in this record, a

9

> jury could properly find that the long delay in scheduling surgery amounted to deliberate indifference to the prolonged pain of Plaintiff, for which Defendant might be liable . . . .

*Proffitt*, 1996 Tenn. App. LEXIS 440, at \*10; *see also Hathaway v. Coughlin*, 841 F.2d 48, 50-51 (2d Cir. 1988) (holding that plaintiff's affidavit alleging a delay of over two years in scheduling surgery to replace broken pins in hip was enough to survive a motion for summary judgment because the affidavit created a factual dispute). In this case, in the absence of a meaningful response to Sweatt's discovery requests pertaining to the recommended surgery, we are unable to determine whether Sweatt's medical condition is a "serious medical need" under the Eighth Amendment and, if so, whether the employee Defendants were deliberately indifferent to his needs. Under these circumstances, summary judgment on this issue was premature.

Therefore, we must reverse in part the grant of summary judgment in order to permit discovery on Sweatt's Eighth Amendment claim based on the delay in the recommended surgery. "A prisoner pursuing a civil lawsuit may conduct discovery, but the discovery is subject to appropriate limitations imposed by the trial court. The scope of discovery is within the 'sound discretion of the trial court.'" *Bradfield v. Dotson*, 1988 Tenn. App. LEXIS 117, at \*3 (Tenn. App. Feb. 17, 1998). The trial court in this case, therefore, may, in its discretion, limit the scope of discovery on remand to those issues pertinent to Sweatt's Eighth Amendment claim regarding the surgery, including but not limited to: whether the medical condition is sufficiently serious, the nature of the recommended surgery, and the delay of the surgery. Of course, the trial court may weigh Sweatt's interests with those of the prison in its decisions on discovery.

Sweatt also contends on appeal that the trial court erred in dismissing his claim for retaliation under the First Amendment to the U. S. Constitution. Under the First Amendment, prison inmates have the right to petition or to complain for the redress of grievances, and that right is violated when prison officials retaliate against a prisoner who submits complaints. *See Wolfel v. Bates*, 707 F.2d 932, 933-34 (6th Cir. 1983). An act of retaliation taken against a prisoner who complains about a grievance is actionable under 42 U.S.C. § 1983, even though the alleged retaliatory action, if taken for another reason, would be permissible. *See Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978); *see also Newsom v. Norris*, 888 F.2d 371, 376-77 (6th Cir. 1989).

10

In order to establish a claim of retaliation, a prisoner must set forth probative evidence supporting his claim of retaliation. This proof may be either by direct evidence or by indirect evidence. Indirect evidence may include evidence that the alleged retaliatory acts would not have taken place "but for" the alleged impermissible motive to retaliate or it may establish a chronology of events from which retaliation may be inferred or it may show that the assertion of the constitutional right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 273, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977); *Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991); *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979).

In this case, Sweatt claims that he was denied adequate, timely medical treatment because he filed grievances and made complaints. Other than his conclusory allegations, Sweatt submits no evidence, direct or indirect, indicating that any action of which he complains, including the delay in surgery, was taken in retaliation. Sweatt argues that the allegedly unfavorable treatment began after he complained, but the record indicates that Sweatt began complaining and filing grievances almost immediately after transferring to the Lake County correctional facility. The record reflects that Sweatt continued to submit numerous grievances. Sweatt has submitted no evidence linking medical decisions to his grievances or otherwise indicating retaliation. Indeed, apart from the delay in the recommended surgery, Sweatt submits no evidence indicating that he received unfavorable medical treatment. The record shows that Sweatt was treated on many occasions at the prison medical facility and was eventually transferred to the Special Needs Facility in Nashville for three and one-half months of treatment. Since Sweatt submitted no evidence indicating that any medical decision was motivated by retaliation, summary judgment was appropriate on Sweatt's claim of retaliation. The decision of the trial court is affirmed insofar as it relates to Sweatt's claim of retaliation.

In sum, we affirm the grant of summary judgment in favor of Dr. Butler based on Sweatt's failure to provide expert affidavits or show that he was somehow prevented from doing so. We also affirm the grant of summary judgment as to Sweatt's negligence claims against the prison employees, based on their immunity under Tennessee Code Annotated § 9-8-307(h). The trial court's grant of summary judgment on Sweatt's retaliation claim is also affirmed. The trial court's grant of summary judgment in favor of Defendants on Sweatt's Eighth Amendment claim is affirmed

except as to the claim that arises out of the delay in the recommended surgery. The cause is remanded to permit discovery relating to that claim, within the discretion of the trial court.

The decision of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion. Costs of appeal are assessed equally against the Appellant and the Appellees, for which execution may issue if necessary.

 

 

**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**ALAN E. HIGHERS, J.**

12