# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3283

_____

| | | |
|---|---|---|
| Robert Rustan, Jr., | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Debora Rasmussen; Timothy Helmick, | * | |
| CO, | * | [Not to be published] |
| | * | |
| Appellees. | * | |

_____

Submitted: February 3, 2000
Filed: February 11, 2000

_____

Before RICHARD S. ARNOLD, BOWMAN, and BEAM, Circuit Judges.

_____

PER CURIAM.

Robert Rustan, Jr., an Iowa prisoner, appeals from the District Court's [1] order granting summary judgment in favor of defendant prison officials in this 42 U.S.C. § 1983 action. We affirm.

While incarcerated at Iowa Medical and Classification Center (IMCC), Rustan filed a grievance against defendant correctional officer Rasmussen, contending she

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

harassed him continually regarding the quality of his performance of his prison job. Rustan alleged that after Rasmussen learned of this grievance, and also heard a rumor that Rustan was circulating a petition to have her fired, Rasmussen and fellow correctional officer Helmick engaged in a pattern of retaliatory behavior, culminating in Rustan's transfer to Anamosa State Penitentiary (ASP). This behavior included verbal threats, Rasmussen's filing of a false disciplinary, and Helmick's searching Rustan and his cell.

The District Court granted defendants' motion for summary judgment, rejecting Rustan's contention that it was untimely filed. The Court concluded that even accepting as true Rustan's assertion that his transfer to ASP was motivated in part by the grievance he filed, he had not overcome defendants' evidence that his transfer for other reasons was inevitable, and thus could not show that but for the grievance he filed, he would not have been transferred.

We conclude the District Court did not err in accepting defendants' summary judgment motion, even though it was filed five days after the deadline for dispositive motions set by the Court's scheduling order, because the tardy filing did not prejudice Rustan under the circumstances, defendants had told Rustan they intended to file the motion, and there was no evidence defendants' untimely filing was in bad faith. Cf. Summers v. Missouri Pac. RR. Sys., 132 F.3d 599, 604-06 (10th Cir. 1997) (finding good cause for modifying scheduling order to add witness where no prejudice or surprise to parties and no bad faith or willfulness in failing to comply with court's order).

As to the merits, after our de novo review, see Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997), we conclude that the District Court's grant of summary judgment was appropriate. As to his retaliatory-transfer claim, Rustan failed to rebut defendants' evidence that they had no part in the transfer decision. See Martin v.

Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be liable, defendant in § 1983 action must have been personally involved in or directly responsible for conduct that caused injury). Moreover, in response to evidence defendants submitted that other legitimate penological reasons (Rustan's security rating, available programming, and length of sentence) underlay the transfer decision, Rustan did not provide evidence he would not have been transferred "but for" his actions in opposing Rasmussen. See Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (prisoner must establish transfer would not have occurred "but for" exercise of constitutional right; rejecting retaliatory-transfer claim even where filing of lawsuits against officials was clearly factor in transfer, because prisoner did not prove transfer would not have been made "but for" litigation).

We also conclude summary judgment was warranted on Rustan's claims that defendants harassed and threatened him in retaliation for his grievance and petition against Rasmussen. First, Rustan's claim that Rasmussen and Helmick verbally threatened him cannot form the basis of a cognizable section 1983 claim. See Martin v. Sargent, 780 F.2d at 1338 ("[v]erbal threats are not constitutional violations cognizable under § 1983"). As to Rustan's claim that Rasmussen retaliated by filing a disciplinary charge against him, he failed to rebut defendants' evidence that he was in fact convicted of the disciplinary violation. See Earnest v. Courtney, 64 F.3d 365, 367 (8th Cir. 1995) (per curiam) (retaliation claim is precluded if punishment was imposed based on actual violation of prison rules); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (prison disciplinary committee's finding, based on corrections officer's description of events, that prisoner actually violated prison regulations essentially "checkmate[d]" prisoner's retaliation claim), cert. denied , 515 U.S. 1145 (1995).

As to Rustan's claim that Helmick harassed him by searching his cell, although the Eighth Amendment protects prisoners from the "misery inflicted through frequent retaliatory cell searches," Scher v. Engelke, 943 F.2d 921, 924-25 (8th Cir. 1991), cert.

<u>denied</u>, 503 U.S. 952 (1992), we conclude that the searches Rustan described did not amount to unconstitutional conduct. See <u>Vigliotto v. Terry</u>, 873 F.2d 1201 (9th Cir. 1989) (applying general requirement that Eighth Amendment claimant allege and prove unnecessary and wanton infliction of pain to claim of retaliatory cell search, and finding single incident insufficient); <u>cf.</u> <u>Scher</u>, 943 F.2d at 924 (frequent retaliatory cell searches, some of which resulted in violent dishevelment of inmate's cell, could suffice as requisite injury for Eighth Amendment claim).

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-